## STANDARD CATTLE COMPANY v. BAIRD, COUNTY TREASURER.

TAXATION OF LIVE STOCK ON THE OPEN RANGE — APPEARANCE
BEFORE BOARD OF EQUALIZATION — STATUTORY CONSTRUCTION
— CLASSIFICATION OF PROPERTY FOR PURPOSES OF TAXATION —
CONSTITUTIONAL LAW.

1. To take advantage of the statutory provisions permitting a taxpayer, whose assessment has been raised, to appear before the board of equalization to obtain an adjustment of the assessment, it is not required that the appearance shall be in *person* by the taxpayer, his agent or attorney; but the statute is complied with where the taxpayer invokes the powers of the board by a telegram and letter asking relief from an assessment, the board acknowledging receipt thereof and giving partial relief; and such act of the taxpayer constitutes an appearance before the board within the meaning of the statute.

2. Statutory repeals by implication are not favored. To operate as such the implication must be a necessary one. The later statute must be positively repugnant to the former to operate as a repeal by implication; and if both can stand and have effect, they must be allowed to do so.

3. Chapter 65 of the laws of 1888, providing that live stock upon the open range should have their situs for taxation in the county where their home range is located, did not operate as a repeal of any part of the provisions of Section 3784, Revised Statutes of 1887, which provided that live stock should be taxed in the county where they are being herded, ranged, or kept on the first day of April of the current year. The only effect and purpose of the Act of 1888 was to furnish a rule for settling the question as to the county wherein live stock should be deemed as "being ranged" under the provisions of Section 3784.

4. As the said Act of 1888 (chap. 65) did not repeal said Section 3784 of the revision, the re-enactment of the latter section in 1890, and again in 1890-91, did not repeal the act of 1888; the only change involved in the re-enactments being a change in date from April to January, and again from January to April.

5. The duty of invoking the action of the boards of commissioners of the counties interested, under the provisions of the Act of 1888, to decide the dispute, when a question arises as to the location of the home range of any herd of live stock kept upon the open range, does not devolve upon the taxpayer. When he has appeared before the board of the county wherein the assessment is claimed to be wrongful, seeking an adjustment of the assessment, he has done all that the statute requires or authorizes him to do.

6. The home range of certain cattle was in Crook County. Some of them drifted into Weston County, from time to time, and such of them as were in Weston County were there only because they drifted there, and the owner could not constantly keep them out; but at the various round-ups all such cattle were driven back into Crook County. *Held*, that the cattle were not taxable by Weston County, and the assessment and taxation thereof in said county was wrongful.

7. The assessment of live stock on the open range in a county in violation of the provisions of the Act of 1888 (chap. 65) is a wrongful assessment.

8. Injunction to restrain the collection of such wrongful tax is a proper remedy.

9. The Act of 1888 is not unconstitutional as special legislation or as without necessity or reason creating two classes of live stock for the purposes of taxation. The necessity for the legislation arises from the peculiar characteristics and situation of the property in respect to the subject matter of the legislation.

10. Neither is the act objectionable or unconstitutional because of the provision that the term "home range" shall be construed according to the general understanding among range stock growers of the State. Such provision is at most a legislative definition of a term used in the statute, and is clearly within the power of the Legislature.

[Decided April 3, 1899. Commenced in district court April 3, 1897.]

ERROR to the District Court, Weston County. Hon. JOSEPH L. STOTTS, Judge.

This action was brought by the Standard Cattle Company against John L. Baird, as Treasurer of the County of Weston, to enjoin the collection of taxes levied

upon three thousand head of cattle. In the district court judgment was rendered for defendant, and the plaintiff prosecuted error. The facts are stated in the opinion.

*R. H. Vosburgh, Lacey & Van Devanter*, and *N. K. Griggs*, for plaintiff in error.

The Act of 1888 (Chap. 65) furnishes the rule upon which to determine the county wherein the cattle of plaintiff were taxable. The agreed statement of facts shows that the home range of the cattle was in Crook County. The cattle were taxable, therefore, only in Crook County.

A statute providing for doing an act, as a public duty, or when it requires a public body to take some action, which concerns public interests or the rights of individuals, is mandatory. Windell v. Dubois, 26 Wis, 390; State v. Lean, 9 id., 279; Supervisors v. U. S., 4 Wall, 435; Galena v. Crittenden, 5 id., 705; People v. Supervisors, 51 N. Y., 405; People v. Goff, 52 id., 434; People v. Supervisors, 68 id., 114; Ralston v. Crittenden, 13 Fed., 503; Kellogg v. Page, 44 Vt., 561; Jones v. State, 17 Fla., 411; Rock v. Bridges, 45 Miss., 247; Sandwish v. Fisk, 2 Gray, 298; Life Ass'n v. Assessors, 49 Mo., 512. All acts required by the statute are conditions precedent, and must be complied with before a tax is chargeable. (Hewes v. Reis, 40 Cal., 255.) All means that are intended for the security of the citizen, or ensuring an equality of taxation, and to enable him to know with reasonable certainty for what he is taxed, are mandatory. (Black on Interpretation of Laws, 350–52; Black on Taxation, Sec. 227; Ruby v. Huntsman, 32 Mo., 501; Rock v. Bridges, 45 Miss., 247; Mason v. Fearson, 9 How., 258; Doughty v. Hope, 2 Denio, 594; Deazie v. China, 50 Me., 518; Milford v. Orono, id., 529.)

Where the requisitions prescribed are intended for the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally

are injuriously affected, such statutes are not directory but mandatory. They must be followed, or all other acts done will be invalid. (State Auditor v. Jackson Co., 65 Ala., 142; Frank v. Edwards, 13 Wall, 500; Clark v. Crane, 5 Mich., 151; Spears v. Ditty, 8 Vt., 419; Shawnee Co. v. Carter, 2 Kan., 115; Wheeler v. Chicago, 24 Ill., 105; Kelley v. Craig, 5 Ind., 129. Moreover, it was the duty of the commissioners, not of the plaintiff, to put the machinery of the law in operation, to fix the legal locus for the taxing of the cattle in controversy. Knapp v. Charles Mix Co., 7 S. Dak., 401.

The common law made the residence of the owner of all classes of personalty, the situs for its taxation. Hence, without statute on the subject, Weston County could in no event be held entitled to tax plaintiff's cattle. (Holcomb v. Keliher, 3 S. D., 502; 5 id., 443; 2 Black. Com., 384; Cooley on Taxation, 55; Desty on Taxation, 318; Lumber Co. v. Loraine, 22 Fed., 60; Comstock v. Grand Rapids, 20 N. W., 626.)

The Act of 1888 did not repeal Section 3784 of the Revised Statutes. Neither did the re-enactment of Section 3784 repeal the Act of 1888. The latter act spoke only as to place, not as to time of listing, and the amendments of Section 3784 changed only the time.

*M. B. Camplin, Burke & Fowler,* and *Alfred Hazlett,* for defendant in error.

The plaintiff could not ignore the board of equalization and then seek to avoid the tax by injunction in the courts. It was the duty of the plaintiff to appear in person before the board. The decisions of the board are endowed with the quality of judicial decisions reviewable only on error in the higher courts. (Ry. Co. v. Patterson Co., Treas., 24 Pac., 704; Investment Co. v. Charlton, 13 Saw'y, 25; Trust & Inv. Co. v. Charlton, 32 Fed., 192; R. Co. v. Scanlan, 44 Tex., 649; O'Neill v. Bridge Co., 18 Md., 1; High on Inj., Vol. 1 (2d ed.), 493; R. Co. v.

Noland, 48 N. Y., 518; Powers v. Bowman, 53 Ia., 361; Woodman v. Ely, 2 Fed., 840; Cattle Co. v. Williamson, Treas., 49 Pac., 937; Metcalf v. Fisher, County Treas., 31 Pac., 175. Allegations contained in the petition charging the assessor or the county board with mistakes, irregularities, overassessments, and injustice are no grounds for equitable relief in cases of this character. (Stanley v. Albany County, 121 U. S., 535; Board v. Searight Cattle Co., 3 Wyo., 778; Macklot v. Davenport, 17 Iowa, 379; 25 Am. & Eng. Ency. Law, 242.

It is conceded that 3,000 head of plaintiff's cattle were actually in Weston County on the first day of April. The cattle were subject to assessment and taxation in the county where they were on April first. (Prairie Cattle Co. v. Williamson (Okla.), 49 Pac., 937; Metcalf v. Fisher, 31 Pac. 175; Price v. Kramer, 4 Colo, 547; 25 Cal., 300; 39 Cal. 112; 29 Pac., 321; 51 N. W., 132.)

Under the statute, the board of equalization had the same right to add to and complete the assessment that the assessor had, and the action of the board in doing so was of the same force and effect as if it had been done by the assessor and formed part of the original assessment. (King v. Parker, 73 Iowa, 757; Poppleton v. Yam Hill Co., 8 Ore., 337; Harwood v. North Brookfield, 130 Mass., 561; Parker v. Van Settenburg, 68 Ia., 174; Cameron v. Cappeller, 41 O. St., 533.)

It was the duty of the plaintiff, if he deemed that a question as to home range had arisen, to put the machinery of the statute in motion, and to have called upon the boards of the two counties to act in the matter and decide it, in pursuance of the provisions of the statute. (Clarke v. Board, 69 N. W., 25.)

The Act of 1888 was repealed by the re-enactment of Section 3784, Rev. Stat., on March 14, 1890. That section has been twice re-enacted and covers the whole subject. It is repugnant to the Act of 1888, and repealed it by implication. (Suth. Stat. Const., Secs. 237, 137, 8, 9, 140, 145, 154, 160, 256; Black on Int. of Laws, Secs.

32, 53, 43; Sedgwick on Int. of Stat., Sec. 182; 102 Mass., 386; 18 Ill. App., 559; 5 Or., 243; 26 Pa. St., 446; 13 Mich., 481; 24 id., 389; 15 O. St., 573; 11 Wall., 88; 143 U. S., 18; 3 Wyo., 764; 23 Ency. L., 479, 485.) The latest declaration of the Legislature should prevail. (52 Pac., 652; 6 Ark., 24; 16 Fed., 751.)

The Act of 1888 is unconstitutional as special legislation, and in violation, as such, of Sec. 27, Art. 3, of the constitution prohibiting the passage of special laws. The attempt to create two classes of live stock for purposes of taxation is purely arbitrary, and not based upon any reasonable ground or necessity. (State v. Hammer, 42 N. J. L., 439; Edmonds v. Herbrandson, 2 N. Dak., 270; Nichols v. Walter, 37 Minn., 264; Weinman v. Ry. Co., 118 Pa. St., 192.)

The Act is invalid also because its enforcement depends upon the construction to be given the term "home range" by the range stock growers of the State. Before it can be enforced the range stock growers must be appealed to in order to ascertain its meaning. In other words, they must get together and determine what the statute means, and if they could not agree, of course the Act would be a nullity. The meaning and validity of the Act is thus made to depend upon the construction placed upon it by a few individuals, which makes it clearly unconstitutional. (O'Neill v. Am. Ins. Co., 166 Pa. St., 72; Cooley's Const. Lim., 137.)

Plaintiff has not brought itself within any rule of equity authorizing an injunction to restrain the collection of the tax. (2 Desty on Taxation, 675; Spargur v. Romine, 38 Neb., 736.)

CORN, JUSTICE.

This was a suit brought by plaintiff (plaintiff in error) against the defendant (defendant in error) to enjoin the collection of taxes upon three thousand head of cattle assessed for taxation in Weston County at $36,000 for the year 1896. Upon final hearing the temporary injunc-

tion was dissolved and the suit dismissed. The case was submitted in the court below and comes to this court upon an agreed statement of facts which shows in substance: that plaintiff returned no cattle that year for taxation in Weston County; that the board of equalization at its meeting in June added 4,500 head to the assessment roll, valued at $54,000, as the property of plaintiff, and notified plaintiff of its action. Plaintiff's agent telegraphed the chairman of the board stating that the plaintiff had removed all its cattle from Weston County previous to December, 1895, and requesting that the assessment on its cattle be removed. The board at its subsequent meeting reduced the assessment to 3,000 head, valued at $36,000, and wrote plaintiff's agent, acknowledging the receipt of his telegram and certain letters, and notifying him of such reduction. The plaintiff was the owner of lands and improvements in Weston County on and prior to April 1, 1896, of the value of $500, which was not returned for taxation by the plaintiff for that year, but was assessed by the county and the taxes on it paid by the plaintiff. That on and prior to April 1, 1896, plaintiff had cattle ranging, grazing, and watering upon the open range in Weston County to the probable number of 3,000 head; and at all times since, cattle of plaintiff have been and are ranging, grazing, and watering in said county. That the plaintiff had paid taxes upon a large number of cattle in said county in the years 1891 to 1895, inclusive. That its home ranch is in Crook County, Wyoming, and has been for the past eight or ten years. That it has claimed Crook County as its home range ever since and including the fall of 1895, and its manager would testify that it has used Crook County as its home range and paid taxes therein during that time. That after the regular round-up the plaintiff made a special round-up in the fall of 1895, and drove all its cattle which it could find into Crook County, its purpose being to remove all its cattle from Weston into Crook. That from that time on plaintiff, at its various round-ups, drove its live stock

which it could find in Weston into Crook County to its said home range. That such of its cattle as have roamed and grazed in Weston since that time have drifted in and have remained there without plaintiff's consent, and because plaintiff could not keep them out. Plaintiff has had its business office in Crook, nine miles north of the Weston County line for the past eight or ten years, and has also had a business office at Ames, Neb.

By Section 3784, Rev. Stat. Wyo., it is provided that personal property shall be listed for taxation in the county where it may be on the first day of April of the current year, and that cattle and other live stock shall be listed in the county in which they are being herded, ranged, or kept on that date. This section was amended in 1890, but by Section 3, Chapter 36, Laws of 1890–91, the amending act was repealed and Section 3784 re-enacted. Section 1, Chapter 65, Laws 1888, provides: " All live stock upon the open range shall, for the purpose of taxation, have their situs and be returned, listed, assessed, and taxed in the county wherein is located the home range of such live stock; and the term " home range " shall be construed according to the general understanding and acceptation thereof among the range stock growers of the State; in case any question shall arise in relation to the situs or location of the home range, then, and in that case, the boards of county commissioners of the counties interested shall decide the matter in dispute, but in the event that such boards of county commissioners fail to agree they shall call in the chairman of the next nearest board of county commissioners, and, with his assistance, they shall equalize the assessment."

It is contended by defendant in error that the plaintiff having some property subject to taxation in Weston, the ground of its complaint is at most only an overassessment or overvaluation; that under the statute it should have applied to the board of equalization of that county for an adjustment of the assessment; that it did not do so, and is therefore remediless. The statute constituting the board

and prescribing its duties provides that notice shall be given to any person or company, its agents, or attorneys, whose assessment has been raised, and that either of them may appear before the board, and the board may, upon satisfactory evidence, adjust such assessment. The defendant takes the position that this statute requires an appearance in person by the taxpayer, his agent, or attorney in order to take advantage of its provisions. But we see no reason for concluding that by the expression "appear before the board" the statute intended anything more than would constitute an appearance in the courts of the State. Any act by which a party to a cause invokes relief or protection from the court is ordinarily an appearance. No code of procedure is provided for the boards of equalization, and their proceedings are, it is safe to say, not more formal than the practice in our courts. The agent of plaintiff presented the plaintiff's case, invoked the powers of the board, informally it is true, by sending a telegram and a letter asking for relief from the assessment; and the board acknowledged the receipt of, and acted upon, these communications, and to the extent of reducing the assessment from 4,500 to 3,000 head of cattle gave the relief asked for. We are unwilling to hold that this was not an appearance under the Act; and we are of the opinion that the objection of the defendant that the plaintiff had no standing in a court of chancery because it had not availed itself of its legal remedy in this regard, is untenable.

The plaintiff maintains that the situs of the property in question is to be determined by reference to the Act of 1888; that is, that it is deemed to be in the county where the home range is located. While it is contended on the other hand that the Acts of 1890 and 1890–91, re-enacting Section 3784, Rev. Stats., operate as a repeal of the Act of 1888, leaving the provisions of Section 3784, that live stock shall be listed and taxed "in the county in which the same are being herded, ranged, or kept on the first day of April," unmodified and in full force.

The difficulty of ascertaining where all the cattle of a range herd are actually ranging or grazing on the first day of April of any one year is a matter of public knowledge in this State; and has given rise to a great many controversies between the owners and the taxing officers of the various counties. And the only reasonable inference, under the circumstances, is, that the Act of 1888 was adopted as a supplement to Sec. 3784, to furnish a definition of its terms and a rule by which its provisions could be satisfactorily and uniformly carried out. As it is difficult, and in practice impossible, to ascertain where all the cattle of a herd upon the open range are ranging "or being ranged" on the first day of April, as a matter of fact, the Act of 1888 simply provides that as a matter of law they are deemed to be ranged in the county where the home range is situated. We do not think it operated as a repeal of the existing section or any part of it. There was no express repeal, and the section is not referred to in the act. Repeals by implication are not favored, and to operate as such it must be a *necessary* implication. The two statutes must be positively repugnant or there is no repeal; and if they can stand and both have effect, they must be allowed to do so. The question is largely one of intent; the only effect of the Act of 1888, and we must infer its only purpose, was to furnish a rule whereby to settle the vexed question in what county stock should be deemed as "being ranged," under the provisions of Section 3784. It is not necessary to argue that if the act was not repugnant to and did not repeal the section referred to, then the re-enactment of the section did not repeal the act. The amendment and re-enactment of the section in 1890 involved only a change of date from April first to January first, and the re-enactment of 1890–91 simply changed the date again to April first.

But it is urged by the defendant that conceding the Act of 1888 to be in force, and the home range of plaintiff to have been in Crook County, yet the plaintiff has no standing in this court, not having availed itself of its remedy

under the Act of having the boards of county commissioners of the two counties (calling in if necessary the chairman of the board of a third county) to determine the situs of the home range.    It is said that this being a case of overassessment merely, and not one where the officers were without jurisdiction to tax, it was incumbent upon the plaintiff to exhaust its legal remedies, and that it devolved upon it and not upon the board to put in operation the procedure necessary under the statute to decide the matter in dispute.

We are not convinced by the reasoning of counsel for defendant as applied to this provision.    The section establishing the board of equalization provides a remedy for the taxpayer deeming himself aggrieved by applying to the board, and, under the general principles controlling equity jurisdiction, he must avail himself of that remedy before he can appeal to the courts.    This is not such a provision.

The statute in terms makes it the duty of the boards of the two counties interested to decide the dispute whenever any question shall arise as to the situs of the home range, and the duty to act is not made to depend upon the application or request of the taxpayer.    There is no provision for notice to him, or that he shall be heard, which is out of line with our other legislation upon the subject of taxation if he is to be deemed a party to the dispute.    It is his interest that he pay taxes but once upon the same property; but it is not necessarily of any concern to him in which jurisdiction he pays.    No doubt the question of the situs of the home range would often, and perhaps ordinarily, arise upon his suggestion that he was being taxed upon property in a particular county which was not properly taxable there; that is, by appearing before the boards and asking to have his assessment adjusted.    But this, as we have held, the plaintiff has done; and we do not find in the statute that he is required or authorized to do more by attempting to get the boards of the two counties together, calling in the chairman of a third in case of disagreement, or otherwise putting the machinery of the statute in motion,

But it is not necessary for us to decide the point in this case, for we think it is plain from the agreed statement that no question arose as to the situs of the home range, either between the two counties or between the plaintiff and the county of Weston. It is admitted, and it seems very clearly to have been so admitted from the beginning, that the home range of plaintiff in 1896 was in Crook County. The statement recites that the home range is in Crook, and has been for the past eight or ten years; that the plaintiff has claimed Crook County as the home range, and its manager would testify that plaintiff has so used it during and since the fall of 1895. That from that time on, at the various round-ups, it has driven its stock which it could find in Weston, into Crook County to its said home range. That in the fall of 1895 the plaintiff sent a special round-up outfit into Weston and drove all its cattle which it could find into Crook, its purpose being to remove all of them from Weston into Crook. That such as are in Weston have drifted in from Crook, and have grazed in Weston only because plaintiff could not keep them out. From such statements as these, agreed to by the parties, we see no escape from the conclusion that both plaintiff and defendant understood the home range to have been in Crook, and that it was submitted to the court below with this as one of the admitted facts. In assessing the cattle the action of the Weston County authorities seems to have been based upon the theory of the repeal of the Act of 1888, and that the stock was taxable where it might be on the first of April. The Act being unrepealed and in force, it follows that the property was taxable in Crook and not in Weston.

All question of the plaintiff's remedy is set at rest, however, by reference to our statute. Section 3053, Rev. Stats. 1887, provides that the "district courts shall have jurisdiction to enjoin the illegal levy of taxes and assessments, or the collection of either, and of actions to recover back such taxes and assessments as have been

collected.'' The Supreme Court of the United States, in passing upon a similar statute in Ohio, held that it provided a new remedy, and they say it answers the objection '' that equity will not enjoin the collection of a tax except under some of the well-known heads of equity jurisdiction, among which is not a mere overvaluation or the illegality of the tax, or in any case where there is an adequate remedy at law.'' Cummings v. Nat. Bank, 101 U. S., 153. But, apparently to eliminate all question of the intention of the Legislature, Section 3 of the Act of 1888 provides: ''In case any live stock upon the open range shall be wrongfully assessed, or assessed in some county in violation of the provisions of this Act, the owner or owners of such live stock so wrongfully assessed shall have the right to an injunction restraining the collection of such wrongful tax.'' This provision conclusively determines two propositions: That the assessment of live stock upon the open range in a county in violation of the provisions of the Act is a wrongful assessment, and that injunction in such a case is a proper remedy.

The only objection of defendant remaining to be considered is that the Act of 1888 is special legislation, and in violation of the constitution. The substance of the objection as stated in defendant's brief seems to be that ''the attempt to thus create two classes of live stock for purposes of taxation is purely arbitrary, and not based upon any reasonable ground or necessity.'' We accept as accurate the statement of the law upon the subject as quoted from the first case cited by defendant: ''The characteristics which serve as a basis for classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be a substantial distinction having reference to the subject matter of the proposed legislation, between the objects or places embraced in such legislation, and the objects or places excluded. The marks of distinction on which the classification is founded must be such in the nature of things as will, in some reasonable degree, at

least, account for or justify the restriction of the legislation." State v. Hammer, 42 N. J. Law, 439. Or the statement in another case relied upon by defendant: "Every law is special which does not embrace every class of objects or persons within the reach of statutory law, with the single exception that the Legislature may exclude from the provisions of a statute such classes of objects or persons as are not similarly situated with those included therein, in respect to the nature of the legislation. The classification must be natural, not artificial. It must stand upon some reason having regard to the character of the legislation. Edmunds v. Herbrandson, 2 N. Dak., 270.

In this case the necessity, and the sole necessity, for the legislation, arose out of the peculiar characteristics and situation of the property in reference to the subject matter of the legislation. Other personal property has a fixed situs either because incapable of locomotion or because in some way confined or restrained. Range stock, upon the other hand, is not confined or intended to be confined. That the animals shall roam at will is the essential characteristic of the range stock business, and out of this distinguishing characteristic arises the difficulty and injustice intended to be remedied by the statute. It is to be kept in mind that classification is not prohibited. As has been said, "for the purpose of taxation real estate may be classified. Thus timber lands, arable lands, mineral lands, urban and rural, may be divided into distinct classes and subjected to different rates." And in like manner other subjects. Persons may be classified. Minors distinguished from adults, males from females, *femes covert* from single women, etc. Wheeler v. Philadelphia, 77 Pa. St., 338." A law framed in general terms, restricted to no locality, and operating equally upon all of a group of objects, which having regard to the purpose of the Legislature are distinguished by characteristics sufficiently marked and important to make them a class by themselves, is not a special or local law, but a general law."

Sutherland on Stat. Const., Sec. 127; Van Riper v. Parsons, 40 N. J. L., 123.

Neither do we think the legislation is special or otherwise objectionable, as contended by defendant in error, on account of the provision that "the term 'home range' shall be construed according to the general understanding and acceptation thereof among the range stock growers of the State." It is contended that this in some way delegates the construction and execution of the statute to those engaged in this particular industry. We do not think so. The provision probably adds nothing to the force or meaning of the Act. The term "home range" is not used or known, as we believe, except in the range stock business. It is necessarily technical and must have a technical interpretation. The provision does not give a new definition of the phrase, and does not change the rule of evidence by which the courts when necessary may ascertain its meaning. Even if it did the legislation would not therefore be objectionable. The provision is at most a legislative definition of a term used in the statute. This is clearly within the power of the Legislature, and one very often exercised.

The case of O'Neill v. American Fire Ins. Co., 166 Pa. St., 72, relied upon by defendant, is not applicable. The Legislature of that State enacted that all insurance companies should use a particular form of policy to be thereafter prepared by the insurance commissioner. The court held that the Act attempted to delegate to the commissioner the power to make the law governing the form of insurance policies. There is no resemblance between the two provisions.

As in some of their aspects several of the questions presented are somewhat novel, and counsel for defendant in error have contended with great earnestness and ability and apparent candor for the correctness of their views, we have gone at considerable length and detail into the consideration of them. But we think there can be no question that the property involved was wrongfully assessed for taxation in Weston County, and that the plaintiff was entitled to the relief prayed for.

We are therefore of the opinion that the judgment of the court below must be reversed.   Judgment reversed and cause remanded with instructions to the court below to enter judgment for the plaintiff and making the injunction perpetual.

POTTER, C. J., and KNIGHT, J.. concur.