## SWAN, ET AL., v. DICKINSON, COUNTY TREASURER.

TAXATION OF RANGE CATTLE—INJUNCTION.

1. Under the statute (R. S., Secs. 1801, 1802), if the home range of cattle is entirely in one county, they are not taxable in any other.

2. Plaintiffs in 1888 listed for taxation in Uinta County 1,800 head of range cattle, and 2,200 head in 1889. They listed none in Fremont County adjoining, but were assessed in such county with 2,000 head in each year. The home ranch and range headquarters were in Uinta County, but a large number of the cattle ranged habitually in Fremont County. The evidence was conflicting as to the effort made to drive the cattle from Fremont into Uinta, but plaintiffs had corrals and branded in both counties. There was evidence that plaintiffs actually owned 3,500 to 4,000 head in the two counties, and the senior member and manager of plaintiff firm conceded the ownership of 3,000 head in each year. *Held,* that an injunction to restrain the collection of the tax levied by Fremont County was properly refused.

3. Plaintiffs having listed but 1,800 head in Uinta County in 1888, and 2,200 head in 1889, and having made no return to Fremont County, but the ownership of 3,000 head being conceded, and a large number thereof having ranged habitually in Fremont County, while the home ranch and range headquarters were in Uinta; *Held,* in a suit to restrain the collection of a tax upon 2,000 head in each year by Fremont County, that it was a legitimate conclusion, and plaintiffs were not in a position to question, that the cattle unaccounted for in the returns to Uinta County were cattle ranging in Fremont County, and not taxable in Uinta; there being no issue in the case of over assessment, but the suit being based upon an alleged illegal tax upon cattle having legal situs in another county, and actually taxed in such county.

4. Since a large number of plaintiffs' range cattle actually roamed in Fremont County, they were taxable there, unless they had merely drifted off their home range in the adjoining county; and if the cattle were on their home range in Fremont, they were taxable there, under the statute, and not in the adjoining county of Uinta, where the home ranch and range headquarters were located.

5. It was the duty of plaintiffs to list all their cattle for taxation, and, if a controversy arose as to situs, the statute pointed out a method of adjustment. (R. S., Sec. 1801.)

[Decided January 10, 1903.]                    (70 Pac., 1050.)

ERROR to the District Court, Albany County, HON. RICHARD H. SCOTT, Judge of the First Judicial District, presiding.

On July 11th, 1890, the plaintiffs in error, E. D. Swan & Sons, commenced their action against the Treasurer of the County of Fremont, and in their petition set forth in substance as follows:

That in 1888 and 1889 plaintiffs were the owners of certain live stock, kept and located on the open range; that in both years the home range of plaintiffs was located entirely within Uinta County, and that no part of the home range was within Fremont County; that in 1888 there was assessed against Edward D. Swan 2,000 head of cattle, and in 1889 2,060 head of cattle by Fremont County; that in neither year did Edward D. Swan own any cattle individually, but that the co-partnership did, and that said assessments were intended as assessments of the property of the co-partnership; that $647.65 in taxes was levied against Edward D. Swan in 1888, and $564.94 in 1889; that in neither of said years did the plaintiffs or Edward D. Swan list any property in Fremont County, but that *all* the cattle of plaintiffs were assessed to them in Uinta County; that during said years plaintiffs claimed and insisted that the home range of their cattle was in Uinta County, and that the County Assessor and County Commissioners of Fremont County were duly notified thereof prior to the times when the assessments were made; that, upon learning that both counties would assess them, they demanded of the Board of County Commissioners of both counties that the dispute be decided, but that no attention was paid to this demand, and that the Fremont County Board refused and failed to have the question determined in the manner provided by law; that said assessments were illegal and void; that the defendant, as collector of taxes, was threatening to collect said taxes by distress and sale of said live stock, and that an injunction was necessary to prevent its sale.

The answer of the defendant in substance was as follows:

The location of the home range in Uinta County was denied; it was denied that the assessor and board were notified as claimed; denied that the cattle mentioned in the petition as being assessed in Fremont County were in those years assessed in Uinta County; denied that demand was made for the settlement of any dispute as to the location of the home range; and averred that the assessment was legal.

The case was not finally heard until in 1900, and then in Albany County. The court found in substance as follows:

That in the years in question plaintiffs were the owners of as many cattle in Fremont County as were assessed against them; that in the year 1888 they returned 1,800 head of cattle and in the year 1889 2,200 head of cattle for taxation in Uinta County; that in each of the years 1888 and 1889 they were assessed on 2,000 head of cattle in Fremont County; that in 1888 they owned at least 3,800 head of cattle and in 1889 at least 4,200 head; that in both years the home range of plaintiffs was in both counties, and that all of their cattle ranged wholly in both counties; that in 1888 the general disposition of their cattle was 1,800 head in Uinta and 2,000 head in Fremont, and in 1889, 2,200 head in Uinta and 2,000 head in Fremont; that in neither year were the cattle assessed in Fremont the cattle which were returned in Uinta: that in neither year was there any dispute between the two counties as to the location of the home range; and that in neither year were the plaintiffs assessed in both counties for a greater number of cattle than was owned by them and ranging in both counties. On these findings the court concluded that the assessment was legal and dissolved the injunction.

*N. E. Corthell,* for plaintiff in error.

The question involved refers solely to tax on range cattle. It is claimed by the plaintiffs that their home range was entirely in Uinta County, and by the defendants that it extended over both counties. Since this suit was brought the

questions involved have been largely determined in this
court, in Standard Cattle Co. v. Baird, County Treasurer,
8 Wyo., 144, so that it is unnecessary to do more than to
apply the principles laid down in that case to the particular
facts established on the trial of this case.

The decision of the trial court was against the plaintiffs
on the home range question, and its judgment is based on
that finding.   It may be urged by the defendant that the
finding of the trial court upon this question is conclusive.
There is abundant authority in the decisions of this court
establishing the rule that a finding of fact made by the trial
court, upon the conflicting testimony of witnesses present
in court, will not be set aside or reversed, unless the verdict
or finding is not sustained by sufficient evidence or is clearly
against the weight of evidence.   (Rainsford v. Massengale,
5 Wyo., 9;  Edwards v. Murray, 5 Wyo., 157;  Smith Drug
Co. v. Casper D. Co., 5 Wyo., 515;  Jackson v. Mull, 6 Wyo.,
55;  Marshall v. Rugg, 6 Wyo., 284;  Conway v. Smith Mer.
Co., 6 Wyo., 479.)

This rule, however, is based upon sound reason and has
its natural and necessary limitations.   It is said that "a trial
court has peculiar advantages not possessed by a reviewing
court for determining the truth of the testimony of a witness
from his demeanor in testifying."   (Rainsford v. Massen-
gale, *supra.*)

And again, "It is not a question whether this court from
the written report of the evidence would so find.   The trial
court had most of the principal witnesses before it, giving
that court the better opportunity of judging of their char-
acter and credibility."   (Conway v. Smith Mer. Co., *supra.*)

The reason for this rule fails in the case at bar.   The
case was tried wholly on the written testimony of the wit-
nesses and stipulations of the parties.   No witnesses ap-
peared before the judge who tried the case.   This court has
before it precisely what the trial court had—a written
record.

The case, therefore, stands before this court substantially

as though it were a case of first instance and of original jurisdiction. (Butler v. Hannah, 103 Ala., 481; Ritmaster v. Brisbane, 19 Colo., 371; Baker v. Rockabrand, 118 Ill., 365; Durham v. Carbon Coal & Mer. Co., 22 Kan., 243; Martin v. Brown, 4 Minn., 282.)

Were it otherwise, we submit that the court could not meet with any serious difficulty in resolving the question of fact in favor of the plaintiffs. There is no substantial or real conflict in the testimony. With the exception of one witness, the evidence given by all the witnesses on either side, as to the location of the home range, can be easily reconciled. A conflict in the testimony, in order to preclude a re-examination, must be one of fact, and a real, necessary and irreconcilable one as opposed to one which is apparent only. (Sherlock v. Leighton, 9 Wyo., 297; 63 Pac., 583.)

It would appear from the defendant's evidence that it was considered sufficient to show that the cattle actually ranged in considerable numbers in Fremont County. And this is probably the theory on which the case was tried for the defense. The same theory appears to have been the basis of the defense in Standard Cattle Co. v. Baird, *supra*. The evidence in this case was taken before the decision of this court in the latter case. In view of the opinion of the court in that case, however, it would seem that the defendant's theory is left without any support.

In the Standard case it was admitted that the "plaintiff had cattle at all times, ranging, grazing and watering upon range in Weston County, to the probable number of 3,000 head." In that case as in this, the plaintiff's home range was in another county and its ranch about the same distance from the boundary. In that case the plaintiff owned lands and improvements, subject to taxation, in Weston County.

Whatever distinctions can be drawn between the two cases seems to us to clearly favor the plaintiff's position in this case. We submit that the case at bar is fully within the rule prescribed by statute, and interpreted and declared by this court in the Standard Cattle Company case.

But were the evidence otherwise, and had the defendant been able to show, by a preponderance of evidence that the home range of the plaintiffs extended over both counties, the plaintiff would still be entitled to relief. The statute has established a particular method of dealing with such cases, the practical need of which was long felt. A sort of joint assessment is prescribed, protecting equally the rights of the taxpayer and of the several counties. The question of the location of the home range no longer concerns the taxpayer, who is left free to range his cattle where he pleases, and thus establish the home range in either county or in both counties. The location when once established can be ascertained in but one way; that is, by the concurrent action of the two boards, with an arbitrator in case of need.

It is perfectly clear that the question was mooted in this case. It matters not in what manner or how the question may arise. Whenever and however it may arise, it immediately becomes the statutory duty of the boards concerned to concurrently determine the question of location. (Standard Cattle Co. v. Baird, *supra.*)

*Clark & Breckons* and *W. E. Hardin,* for defendant in error.

In the brief of counsel for plaintiffs in error it is tacitly conceded that the conclusions of law arrived at by the court are sustained by the findings of fact—a concession which must be made, since there can be no question made as to the correctness of the law upon these facts.

A careful reading of the testimony on the question of the location of the home range discloses that none of the witnesses were quite clear as to the meaning of the term. All of them agreed that the cattle ranged in both counties, and that there was no natural barrier to prevent them from drifting from one county to the other. The best that can be said from the direct testimony on the point, so far as the position of the plaintiffs is concerned, is that the plaintiffs

claim their home range to be in Uinta County, but that the cattle did range in both counties, an endeavor being made, however, to keep them in Uinta County by driving there after the round-ups.

Plaintiffs are presumed to have been acquainted with the law requiring them to return all of their property for taxation. In 1888 and 1889 they owned, according to the finding of the court, at least 3,800 head of cattle. Over the signature of Mr. Swan, and by his oath, he makes a statement in his schedule that in 1888 1,800 head and in 1889 but 2,000 head of these cattle ranged in Uinta County. Where was the situs of the remainder of the cattle for the purposes of taxation? With the premises given, there can be but one answer to this question—3,800 head of cattle are taxable; they are in two counties only; 2,000 head of them are taxable, by the statement of the owner, in one county. Where should the balance be taxed?

Is it not idle to enter into any discussion of the home range, in the face of this proposition? It cannot avail the plaintiff to say that he may claim his home range to be in Uinta County, and that any attempt on his part to escape taxation on at least half of his property is a matter alone for the authorities of that county. No natural barriers divide the two counties, and it is certainly not to be presumed that the cattle would pay much attention to imaginary lines.

We cannot see how it can be said that the record discloses a dispute between the two counties as to the location of the home range. It is true that in the Standard Cattle Company case this court held that where a dispute existed it was not the duty of the taxpayer to start the law in motion to get the boards together, but in this case the Board of County Commissioners of Fremont County had before them only an assessment of cattle which were properly assessed in Fremont County. It was not a case in which they were called upon to see that the taxpayer "paid taxes but once upon the same property," but was a case where they simply endeavored to see that a taxpayer did not escape taxation.

CORN, CHIEF JUSTICE.

Plaintiffs in error brought this suit to enjoin the collector of Fremont County from collecting certain taxes for the years 1888 and 1889. They were the owners of a large number of range cattle. Their principal, or home, ranch was in Uinta County, about nine miles west of the Fremont County line, where E. D. Swan, the senior member of the firm, resided. In 1888 they returned for taxation in Uinta County eighteen hundred head of cattle and in 1889 twenty-two hundred head. They returned none in either year in Fremont, but they were assessed in that county upon two thousand one hundred and twenty-eight head in 1888 and two thousand and sixty head in 1889, two thousand of those, in each year, being strictly range cattle, the remainder being higher class stock, which were not upon the range except during parts of the year, and which are not involved in the consideration of the case. They allege that their home range was entirely in Uinta, and no part of it in Fremont; that they paid taxes in Uinta upon all their cattle, and that they were not taxable upon any in Fremont.

The question involved is very largely one of fact. Section 1801, Revised Statutes, provides that all live stock upon the open range shall, for the purpose of taxation, have their situs and be taxed in the county wherein is located the home range of such live stock. And Section 1802 provides that whenever the home range shall be located in two or more counties the number to be assessed in each county shall be determined according to the general disposition made of such live stock when upon their home range.

Under these provisions, if plaintiffs' home range was entirely in Uinta, they were not taxable upon any range cattle in Fremont. But the District Court found that the home range was in both Uinta and Fremont, that plaintiffs' cattle ranged in both counties, and that they owned, in 1888, not less than 3,800 head and, in 1889, not less than 4,200 head. There was quite a mass of testimony taken in the case, and

while there is some apparent conflict as to the location of the home range, we think such conflict is, for the most part, more apparent than real. There can be no doubt, from the evidence, that the home ranch and range headquarters, for the entire herd, were in Uinta County. But it also clearly appears, from the evidence, that a large number of the cattle ranged in Fremont. And we think the evidence tends to show that such as ranged in Fremont had not simply drifted over off their home range in Uinta, but that they ranged there habitually and during the greater part of the year. It appears that the summer range for the entire herd, or at least the major portion of it, was toward the mountains, which were in Uinta, and at the spring round-ups they were turned in that direction. But they came down, or were driven down, in the fall and were distributed, or distributed themselves, on both sides of the county line. The plaintiffs had corrals and branded in both counties. It is not easy to determine what effort, if any, was made to drive the cattle, found in Fremont, into Uinta, as the evidence upon the subject is very conflicting. But as a large number of the cattle unquestionably ranged in Fremont and the operations of the company were carried on in both counties, it is questionable if, upon the evidence upon this subject alone, the court would have been justified in finding that the home range was entirely in Uinta and the cattle ranging in Fremont not taxable in the latter county.

But there was also evidence tending to show that the plaintiffs actually owned from thirty-five hundred to four thousand head in the two counties, and E. D. Swan, the manager and senior member of the firm, conceded upon the witness stand that they owned some three thousand head in each of the years in question. They returned for taxation in 1888 only eighteen hundred head and, in 1889, only twenty-two hundred head, all in Uinta County, leaving unaccounted for twelve hundred head, in 1888, and eight hundred head in 1889, according to their own estimate. It is, therefore, we think, a legitimate conclusion and one which

the plaintiffs are not in position to question that these were cattle ranging in Fremont and which, in the judgment of the plaintiffs, were not taxable in Uinta.

This is not a proceeding to correct an over assessment, or to equalize the assessment between the two counties. But it is an appeal to the equitable jurisdiction of the court to enjoin the officers of Fremont County from collecting an illegal tax upon property which the plaintiffs allege and undertake to prove has its legal situs for taxation in another county and has actually been taxed in such other county. We think plaintiffs' own evidence fails to show this, but upon the contrary, strongly tends to show that they regarded it as taxable, not in Uinta, but in Fremont, or else that they conceived that that part of their property should escape taxation altogether. In either case, we are at a loss to see how the plaintiffs could have any standing in court in this action. It is quite true that Fremont County could gain no rights with reference to the taxation of the property by the mere fact that Uinta had failed to assess this or any other property of plaintiffs subject to taxation in the latter county. But this is not such a case. A large portion of plaintiffs' cattle were actually roaming in Fremont. They were subject to taxation there unless they had merely drifted off their home range in the other county. If they were on their home range in Fremont, as we think the evidence tends to show, they were taxable there under the statute and not in Uinta. It was the right of the plaintiffs to be protected from any over assessment either in Uinta or Fremont, and the statute provides the method of obtaining relief. But this is not the plaintiffs' claim or the case presented by the allegations of their petition. They have elected to proceed under the statute providing for an injunction in cases where live stock is assessed for taxation in a county other than that where its home range is situated, and claiming, not an over assessment, but that the entire assessment is in violation of the statute. This claim is not supported by the evidence. It

was the duty of plaintiffs to list all their property for taxation, and if a controversy arose as to its situs the statute pointed out a method of adjustment. It is not important, in this case, whose duty it was to institute the proceedings and put the machinery of the statute in motion, for no controversy between the two counties arose, but each seems to have assessed the cattle which it deemed subject to taxation under its authority. And there was evidence tending to prove and the court found that the entire assessment of the two counties did not exceed the number owned by plaintiffs, and that there was, therefore, no double assessment; and, by the plaintiffs' own evidence, there were twelve hundred head in one year and eight hundred in the other as to which there was no double assessment and which would have entirely escaped taxation but for the assessment of Fremont County. Leaving out of view, therefore, the question whether there was any over assessment in either county—a matter which was not put in issue by the pleadings and to which the evidence was not directed—we are of the opinion that the injunction was properly dissolved.

In Sandard Cattle Co. v. Baird, 8 Wyo., 144, we found that it was admitted that the home range was in the other county and the decision in that case has, for that reason, only a very limited application to the facts of the case under consideration. *Judgment affirmed.*

Knight, J., concurs.

Potter, J., having been of counsel in the case, did not sit.