**AMERICAN SURETY COMPANY OF NEW YORK, a corporation, Plaintiff,**

v.

**PITTSBURGH–DES MOINES STEEL COMPANY, a corporation, Defendant and Third-Party Plaintiff,**

v.

**DAVIS CONSTRUCTION COMPANY, Inc., Third-Party Defendant.**

**Civ. No. 4751.**

United States District Court
D. Wyoming.
March 10, 1965.

W. J. Wehrli, Casper, Wyo., for plaintiff and third party defendant.

Hirst, Applegate & Thomas, Cheyenne, Wyo., for defendant and third party plaintiff.

KERR, District Judge.

This is a suit in which American Surety Company of New York, as insurer and subrogee of the prime contractor, Davis Construction Company, Inc., seeks indemnity from defendant, the sub-contractor, for $32,950.37 paid by plaintiff for damages, costs and attorney's fees on account of the personal injury suit brought by defendant's injured employee.

Plaintiff is a corporation organized under the laws of New York with its principal place of business in the State of New York. Defendant, Pittsburgh-Des Moines Steel Company, is a corporation incorporated under the laws of Pennsylvania, having its principal place of business in the State of Pennsylvania; and Third Party Defendant, Davis Construction Company, Inc., is a corporation organized under the laws of the State of Nevada, having its principal place of business in the State of Nevada. All of said parties are authorized to do business in the State of Wyoming. The jurisdictional requirements for diversity cases are satisfied.

Plaintiff predicates its right to indemnity on the contractual obligations between Hammond Wyoming Company, Incorporated, and Davis Construction Company, Inc. Davis was the prime contractor for the construction of the Gray Reef Dam near Casper, Wyoming. In April 1960 Davis sub-contracted the installation of certain of the steel and iron work to Hammond. By a merger agreement of December 5, 1960, Pittsburgh-Des Moines Steel Company became the successor of Hammond Wyoming Company, Incorporated, and is subject to, and obligated to pay, all the debts and obligations of Hammond Wyoming Company, Incorporated. For convenience and clarity, the prime contractor is referred to as "Davis" and the sub-contractor as "Hammond" or "defendant".

To perform its portion of the dam construction under the government contract, Davis erected a scaffolding which its employees used both before and after the accident. This was the only scaffolding at the dam site at the time of the accident. On November 7, 1960, Albert Pauley, an employee of Hammond, was injured while working on the third tier of Davis' scaffolding. Pauley was using an impact wrench and his full weight and that of his co-worker was on the planks which had been spliced together. When he sat down the planks on the scaffolding gave way and Pauley fell, sustaining serious injuries. On January 3, 1961, Albert Pauley commenced his state court suit against Davis Construction Company. In that action it was proved that Pauley fell while using the scaffolding, that he was injured, that Davis constructed the scaffolding, and that Davis

was negligent, which negligence was the cause of Pauley's injuries. Albert Pauley thereupon recovered damages from Davis and on September 28, 1961, judgment was entered in the State District Court against Davis in the amount of $47,341.05 plus costs of $81.80. Pending appeal to the Supreme Court of Wyoming, a settlement was effected in February 1963, when plaintiff paid Pauley the sum of $27,465.00. In addition to the settlement payment, plaintiff expended $5,485.37 in costs and attorney's fees to defend the state court action on behalf of its insured, Davis Construction Company.

Pursuant to the comprehensive liability policy issued by plaintiff to Davis, and in effect at the time of the accident, plaintiff agreed to pay all sums which Davis became legally obligated to pay as damages. Upon such payments on behalf of its insured, plaintiff became subrogated to all of the insured's rights of recovery against any third person. Plaintiff claims, therefore, that Davis sustained loss and damage in the sum of $32,950.37 which plaintiff, as subrogee to the rights of Davis, is entitled to recover from Hammond.

On February 5, 1961, plaintiff notified defendant of the state court action brought by Pauley against Davis, and advised defendant of its contention that defendant was obligated to appear and defend the suit and to indemnify Davis. Defendant refused to appear in the state court action and has at all times denied any obligation to indemnify Davis against liability for the damages sustained by defendant's employee.

The sub-contract agreement was executed April 6, 1960, by Davis Construction Company, Inc., and Hammond Wyoming Company, Incorporated. There are three principal contract clauses which this court must construe to determine the rights and duties of the parties. Paragraph 1 of the sub-contract agreement requires the defendant to perform the following work:

"1. SCOPE OF WORK. That the work to be performed by the Sub-contractor under the terms of this agreement consists of the following:

*Furnishing of* all labor and material, tools, implements, and equipment, *scaffolding,* permits, fees, etc., *to do all of the following:* (Emphasis added)

| Item 17 | Install reinforcing bar * * * |
| Item 25 | Install cableway and car * * * |
| Item 25–26 | Install reinforcing bar * * * |
| Item 27–28 | Install two radial gates and gate hoists * * *." |

The clear, unambiguous requirement that defendant furnish the scaffolding is an integral part of the work it was required to perform under the sub-contract. It is undisputed that Hammond did not furnish the scaffolding, but instead, with Davis' permission, Hammond's employees used Davis' scaffolding for the performance of the steel and iron work under the sub-contract. Having failed to supply its own scaffolding for the safe and proper performance of the steel and iron work, defendant's further obligation was set forth in the third paragraph in paragraph 3 of the subcontract which requires Hammond to protect Davis in the following manner:

"Should the proper workmanlike and accurate performance of any work under this contract depend wholly or partially upon the proper workmanlike or accurate performance of any work or materials furnished by the Contractor or other sub-contractors on the project, the *Sub-contractor agrees to use all means necessary to discover any such defects and report same in writing to the Contractor before proceeding with his work which is so dependent;* and shall allow to the Contractor a reasonable time in which to remedy such defects; *and in the event he does not so report to the Contractor in writing, then it shall be assumed that the Sub-contractor has fully accepted the work of others as being satisfac-*

*tory and he shall be fully responsible thereafter for the satisfactory performance of the work covered by this Agreement, regardless of the defective work of others."* (Emphasis added)

Plaintiff established by a preponderance of the evidence that the defendant's employees had not worked on the third tier of Davis' scaffolding before the date of the accident, and that no one had inspected that tier before its use by defendant. Neither Pauley nor his co-worker saw the spliced planks until after the accident but they could have been seen had some one looked for them. The record is clear that defendant had never examined nor inspected the third tier of the scaffolding prior to the time defendant's employees went up there to work. Naturally, therefore, defendant did not discover the defect caused by the splicing of the planks and did not give Davis any written notice thereof. Indisputably, defendant breached its sub-contract by its failure to perform the acts required of it under that contract, namely, construction of its own scaffolding, inspection of Davis' scaffolding, discovery of the defects in, or inadequate construction of, Davis' scaffolding, and a written report thereof to Davis. Because of such breach of contract, plaintiff was subjected to a personal injury lawsuit, incurred expenses therein, and suffered the loss of the damages which were recovered by Pauley. Plaintiff, therefore, is protected against such breach by the following provision in the last paragraph of paragraph 3 of the sub-contract agreement which reads as follows:

"The Sub-contractor shall indemnify the Contractor and the owner against, and save them harmless from, *any and all loss, damage, expenses, costs, and attorneys' fees incurred or suffered on account of any breach of the aforesaid obligations and covenants, and any other provisions or covenants of the contract.*" (Emphasis added)

It is plaintiff's position that Pauley's injuries, which the jury found were sustained from the defective condition of the scaffolding, were, in essence, the result of Hammond's failure to perform its obligations under the sub-contract agreement. Defendant denies any breach of contract, and any liability to plaintiff. It contends that even if there were a breach of contract, the indemnity provisions of that sub-contract do not indemnify Davis for the consequences of its own negligence. Defendant has not sustained its affirmative defenses, counterclaims or third party complaint by either the facts or the law. The defense of res judicata cannot defeat plaintiff's right to recover for breach of contract. The rights and duties of the parties toward each other under the terms of the contract were not in issue and were not determined by the personal injury suit in the State District Court brought by the injured employee against Davis. Defendant's claim that plaintiff waived the contract requirement that Hammond supply its own scaffolding is not supported by the evidence. Davis' permission for Hammond to use the scaffolding that was already on the dam site was not a warranty that Davis' scaffolding was suitable or adequate for the work to be performed under the sub-contract by Hammond. In fact, any alleged warranty for fitness for the work of the sub-contractor is foreclosed by the third paragraph of paragraph 3 of the sub-contract wherein the sub-contractor is obligated to search for and report any defects in materials furnished by the prime contractor. No evidence appears in the record to prove the contention of defendant that Davis waived the breach of contract. Likewise, defendant's reliance on the prime contract between Davis and the United States is untenable. Hammond was not a party to, nor the beneficiary of the prime contract. See United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039 (1944); United States for Use and Benefit of Davison v. York Electric Construction Co., Inc., et al., D.C.No.Dak., 184 F.Supp. 520 (1960).

■ The Workmen's Compensation statute of Wyoming does not bar plaintiff from pursuing its rights against Hammond under the sub-contract. That law relates to the rights and obligations of the employer to its employees and has no application to the purely contractual obligations owing by the sub-contractor to the prime contractor. Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

■ Defendant earnestly presses its contention that the contract of indemnity does not express or imply an intention to indemnify Davis against the consequences of its own negligence. In an able and comprehensive brief, defendant's counsel analyzed the decisions in which the courts have refused to construe a contract to indemnify the prime contractor against its own negligence. Defendant relies on decisions in which the courts were required to decide whether the parties had contracted to indemnify the contractor or wrong-doer against its own negligence. The issue in the case at bar is distinguishable, for this court must decide whether the contractor is indemnified against loss sustained because of a breach of contract by the sub-contractor. Furthermore, the indemnity clauses in the cases cited by defendant to support its position differ in phraseology and are applied to distinguishable facts and circumstances.

The contractual relationship and duties between Hammond and Davis determine the remedies available to Davis. Indemnity arises out of that independent legal relationship under which Hammond owed a duty to Davis regardless of Davis' negligence toward the injured third party. See Safway Rental & Sales Company v. Albina Engine and Machine Works, Inc., et al., 10 Cir., 343 F.2d 129, Decided February 5, 1965; Pinion v. Mississippi Shipping Company, Inc., D.C., E.D.La., 156 F.Supp. 652 (1957); D. M. Picton & Co., Inc., et al. v. Eastes, et al., 5 Cir., 160 F.2d 189 (1947), cert. den. 331 U.S. 859, 67 S.Ct. 1756, 91 L.Ed. 1866.

This conclusion is supported by the additional fact that defendant covenanted to insure Davis against loss resulting from any acts of Hammond. Defendant was obligated to supply the scaffolding; it did not perform this obligation; instead, it used the scaffolding constructed by Davis without any changes, improvements, or precautions reasonable and necessary for defendant's particular type of work under the sub-contract. Defendant, therefore, adopted the scaffold, together with its defects or infirmities, as its own. As between Davis and Hammond, therefore, the latter assumed the liabilities incident to or resulting from its use. It is for just such acts that the sub-contractor agreed to carry comprehensive public liability insurance to protect the contractor against loss, as expressed in the following excerpt from the sub-contract:

"The Sub-contractor agrees to carry comprehensive public liability and property damage insurance, and such other insurance as the Contractor might deem necessary, in amounts as approved by the Contractor, in order to protect the Contractor and Sub-contractor against loss resulting from any acts of the Sub-contractor, his agents, and/or employees."

■ Defendant and Third Party Plaintiff has not convinced this court that it should be allowed to recover against Davis. It has been clearly shown that defendant breached its contract with Davis thus causing the latter's loss in the personal injury action in the state court. It has also been established that defendant was negligent in using a scaffolding unsuitable for its purposes. Davis had no control of nor supervision over the work or the workmen employed by Hammond. The defect in the scaffolding could have been detected by visual examination in the exercise of ordinary care and defendant was obligated by the sub-contract to make such examination. The non-discovery of the defect constituted a negligent omission and negligent breach of the contract by the defendant. As between Davis, the prime

contractor, and Hammond, the sub-contractor, the latter should be deemed the primary wrongdoer whose acts and omissions in the discharge of its contractual duties cast the prime contractor in damages for the injuries to the employee of Hammond.

For the foregoing reasons, I find that plaintiff, as the subrogee of Davis Construction Company, is entitled to recover from the Pittsburgh-Des Moines Steel Company as successor to Hammond Wyoming Company, the sum of $32,950.37, together with reasonable attorney's fees and costs incurred in this action. I find also that defendant should take nothing by its counterclaim or by its third party complaint.

This memorandum constitutes the Findings of Fact and Conclusions of Law of the Court and further Findings of Fact and Conclusions of Law are not necessary. Judgment for the plaintiff against the defendant shall be entered in accordance with this memorandum, and defendant's counterclaim against plaintiff, and defendant's third party complaint against Davis Construction Company, Inc., should be dismissed.