PAN AMERICAN PETROLEUM CORPO-
RATION (now Amoco Production Com-
pany), Appellant (Third-Party Plaintiff
below),

v.

MADDUX WELL SERVICE, Appellee
(Third-Party Defendant below).

No. 4927.

Supreme Court of Wyoming.

Nov. 17, 1978.

Rehearing Denied Jan. 16, 1979.

Michael J. Sullivan, of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellant.

W. W. Reeves, of Cardine, Vlastos & Reeves, Casper, for appellee.

Before GUTHRIE, C. J., and McCLIN-TOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

An employee of Maddux Well Service, Howard Grouns, died in an oil well fire in 1968. Maddux was, at the time of the incident, conducting workover services at a well location owned by Pan American Petroleum Corporation (now AMOCO Production Company). Work was being performed pursuant to a well and lease service contract between Maddux and Pan American. The personal representative of Grouns' estate filed a wrongful death action against Pan American, alleging negligence on the part of Pan American. Pan American, in turn, filed a third-party complaint against Maddux, alleging negligence on the part of Maddux. Alternatively, Pan American sought reimbursement on the basis of implied and express rights of indemnification and on the basis of contribution. Subsequent to the filing of the third-party complaint, and after demand that Maddux participate in a proposed settlement, Pan American settled the original action. Thereafter, Maddux moved for summary judgment in its favor on the third-party complaint. The trial court granted the motion in favor of Maddux, finding that Wyoming's Worker's Compensation provisions barred all third-party actions against a contributing employer. We will reverse the summary judgment in part and remand the case for a trial on the merits.

Pan American alleged in its amended third-party complaint that it had settled with the plaintiff after a determination that it would have been vicariously liable for Maddux's negligence, but asserted that it was not guilty of negligence proximately causing Grouns' death. Pan American then alleged that Maddux was answerable for the losses sustained by Pan American under a number of alternative theories, including:

1. Negligence on the part of Maddux, or

2. Maddux's failure to perform the work in a good and workmanlike manner, as provided in the well service contract, or

3. Maddux's breach of an expressed warranty to perform the work in a workmanlike manner, or

4. Maddux's breach of an implied warranty to perform the work in a competent manner, or

5. Maddux's express agreement to indemnify Pan American against any liability arising out of work performed under the well service contract, or

6. Maddux's implied agreement to indemnify Pan American against any liability arising out of the work performed by Maddux, or

7. Maddux's implied agreement to assume all risks of injuries to persons arising out of Maddux's work, or

8. Maddux's breach of an express agreement to obtain insurance coverage sufficient to protect Pan American against claims for injuries or death arising out of Maddux's work, or

9. Maddux's liability for contribution as a joint-tortfeasor, in the event Pan American was guilty of any negligence proximately causing Grouns' death.

Briefs in support of Maddux's motion for summary judgment indicate the following responses:

1. The third-party complaint was barred in all respects by the provisions of worker's compensation, and

2. Pan American had no claim for indemnity because either Pan American was not liable to the original plaintiff due to Maddux's independent-contractor status, or

3. Pan American was liable to the plaintiff on account of its own independent negligence.

The trial court exhaustively discussed each of the above contentions, and came to certain pertinent conclusions which can be summarized as follows:

1. Pan American was correct in asserting there was potential liability to the plaintiff such as to justify settlement and then recovery over against Maddux, if there was a right of indemnity.

2. There was no express contract by Maddux to perform the work safely, nor an express warranty against negligent performance, nor an express indemnity agreement.

3. Were it not for the Worker's Compensation provisions, Maddux would be obligated to indemnify Pan American by virtue of an implied warranty obligation, or an implied agreement to assume all risks arising out of the work.

4. All rights of action, including those of Pan American, against an employer are barred by the Worker's Compensation provisions.

On appeal, Pan American contends that the Worker's Compensation provisions do not bar all third-party claims for indemnification and that the trial court erred in precluding a possible recovery on its express-indemnity theory. Maddux contends that, even if Worker's Compensation is not a complete bar to the third-party action, Pan American failed to show that it had satisfied conditions precedent to an indemnity claim because Pan American was not actually liable to the original plaintiff. We will discuss the following issues:

1. Whether the Worker's Compensation provisions preclude all third-party actions for indemnification from a contributing employer;

2. Whether Maddux was entitled to a summary judgment on the ground that Pan American was not liable to the original plaintiff; and

3. Whether Maddux was entitled to a summary judgment on Pan American's express contractual indemnity claim.

## EXCLUSIVITY OF WORKER'S COMPENSATION [1]

The effect of the Worker's Compensation provisions on a third-party complaint for indemnification is a matter of first impression in this court. We have previously considered the propriety of a negligence suit on behalf of a deceased worker against a fel-

---

1. Article 10, Section 4, constitution of the State of Wyoming; and Sections 27–50, and 27–51, W.S.1957.

low employee, *Markle v. Williamson,* Wyo., 518 P.2d 621 (1974), and we have considered the force and effect of certain indemnification agreements under statutes not here in question, *Mountain Fuel Supply Company v. Emerson,* Wyo., 578 P.2d 1351 (1978). The question now before us has been extensively discussed by the courts of other jurisdictions and by certain authorities in the field of worker's compensation. In order to fully answer the contentions of the parties, we find it necessary to discuss the language of the pertinent constitutional and statutory provisions, as well as the public policies which lie at their foundations.

Maddux and the trial court emphasize the constitutional and statutory language which states that the right of an employee to compensation shall be in lieu of "*all rights of action* against any employer . . . *in favor of any person* or persons by reason of such injuries or death." [Emphasis supplied] Both conclude that the words are unambiguous, and by their all-inclusive nature clearly bar all third-party actions against contributing employers. We have reviewed the statutes of other jurisdictions that have been held to bar third-party claims for indemnification, but find that they generally contain broader language than that found in the Wyoming provisions. For example, the statutes of Wisconsin, Colorado and New Mexico provide that employers complying with the worker's compensation provisions shall not be subject "to any liability whatsoever." Even in these states, it is apparent that not all third-party claims for indemnification are barred. See, e. g., *Royal Indemnity Company v. Southern California Petroleum Corporation,* 67 N.M. 137, 353 P.2d 358, 362 (1960) (holding only that the common-law right of indemnity was destroyed, and leaving open for decision the effect of a specific contract for indemnity); and *Hilzer v. MacDonald,* 169 Colo. 230, 454 P.2d 928 (1969) (again, holding only that the common-law right of indemnity was destroyed). See, also, *Holly Sugar Corporation v. Union Supply Company,* Colo., 572 P.2d 149 (1977) (applying Colorado and Montana law).

The effect of the Wyoming Worker's Compensation Act on third-party claims for indemnity has been considered by the United States District Court for the District of Wyoming and by the 10th Circuit Court of Appeals. In *Pittsburgh-Des Moines Steel Company v. American Surety Company of New York,* 10 Cir., 365 F.2d 412 (1966), affirming 238 F.Supp. 850 (D.Wyo.1965), the court held that the Wyoming Worker's Compensation provisions did not bar a third-party action against an employer when there is an express contract of indemnity against the employer. The case that gave rise to this holding involved a third-party action by the subrogee of a prime contractor against a sub-contractor. An employee of the sub-contractor had been injured in a fall from a defective scaffold constructed by the contractor. Indemnity was found to arise out of the independent legal relationship under which the sub-contractor owed a duty to the contractor regardless of the contractor's negligence toward the subcontractor's employee. Based on this decision and the decision in *Royal Indemnity Company v. Southern California Petroleum Corporation,* supra, the federal district court recently observed:

> "It appears to this Court that the only justifiable way to abrogate the Wyoming Workmen's Compensation provision, and its exclusive remedy thereunder is by the existence of a written contract of indemnity against the employer." *Shields v. Bechtel Power Corporation,* 439 F.Supp. 192, 194 (D.Wyo.1977).

The only third-party claim before the court in *Shields* was a claim for contribution. It may be persuasive on that theory of recovery—we are not asked to consider that question here—but the *dicta* with regard to indemnity may be overly narrow.

With these initial thoughts in mind, we return to a construction of the Wyoming Worker's Compensation provisions. As Larson puts it in his treatise:

> "The initial question is whether the exclusive-remedy clause is broad enough to grant immunity to the employer for all causes of action growing out of the accident, regardless of the question of inde-

pendent breach of duty. This issue requires careful examination of the language used in the particular exclusive-liability provision." 2A Larson, *Workmen's Compensation Law,* § 76.30, at page 14–322. (1976).

In considering the language in question, we are confronted with the apparent fact that the exclusivity provisions of the statutes seem to be more restrictive in scope than the constitutional provisions. Article 10, Section 4, of the Wyoming Constitution, provides that the employee's right to compensation takes the place of any action against an employer "in favor *of any person* or persons." [Emphasis supplied] On the other hand, § 27–50, W.S.1957, provided in relevant part that

> "[c]ompensation . . . shall be payable to persons injured . . . or the dependent families of such, as die, as the result of such injuries, . . . The right of each employee to compensation . . . shall take the place of any and all rights of action . . . in favor *of any such person* or persons . . . ." [Emphasis supplied]

Section 27–51, W.S.1957, provided that the rights provided by the workmen's compensation law shall be exclusive of all other rights "of such employee, his personal or legal representatives or dependent family." Thus, while the Constitution speaks of "any" person when it designates those who are barred from suing an employer, the statutes speak only of a certain class of persons. Third parties, seeking indemnification from an employer, do not, therefore, seem to be precluded from bringing suit under the statute but, arguably, they are precluded under the language of the Constitution. This apparent anomaly tends to disappear, however, when the remaining language of the Constitution is considered.

The rights of action in favor of "any" person, that are precluded by the Constitution, are those which arise "by reason of any such injuries or death." Section 27–50, supra, uses the same terminology. Section 27–51, supra, uses the phrase, "on account of any injury." Certainly, a claim for in-

demnification from an employer would not arise *but for* the occurrence of an injury or death to an employee. A third-party claim for indemnity, however, is *not based on the employee's injury.* It is based on—"by reason of"—"on account of"—the alleged breach of an independent duty owed by the employer to the third party. 2A Larson, supra, § 76.30, at page 14–324. A third-party claim for indemnity does not, therefore, fit within the language used in the Wyoming Constitution. This conclusion is buttressed by the realization that the enactment of the Worker's Compensation statutes resulted in a trade-off of rights and liabilities between the employer and the employee. *Zancanelli v. Central Coal & Coke Co.,* 25 Wyo. 511, 173 P. 981 (1918). See, *Markle v. Williamson,* supra, at 624–625, citing *Pittsburgh-Des Moines Steel Company v. American Surety Company of New York,* supra. Third parties, seeking indemnity, received no benefits and, therefore, should not be held to have impliedly given up any rights. 2A Larson, supra, § 76.52, at page 14–407.

We hold that the Worker's Compensation provisions do not bar third-party claims for indemnity. The trial court, therefore, erred with respect to the general legal principles to be applied to Maddux's motion for summary judgment.

As noted previously, the courts of some jurisdictions have based their decisions on the exclusivity issue on the type of indemnity sought. In this case, the parties appear to concede that if Worker's Compensation is not a bar to indemnity based on an express contract, then it is not a bar to claims based on an implied indemnity or on common-law indemnity. As is the case with the issue of contribution, we have, therefore, no occasion in this opinion to decide whether or not causes of action had on implied indemnity or common-law indemnity would be precluded by the Worker's Compensation Act. That inquiry must await a case that squarely presents these last-mentioned issues.

## LIABILITY TO ORIGINAL PLAINTIFF

Maddux, citing 41 Am.Jur.2d, Indemnity, § 33, correctly points out that Pan Ameri-

can cannot recover its prejudgment settlement payment if it had no liability to the original plaintiff. Maddux further insists that to prevail, Pan American must prove actual and not merely potential liability to the original plaintiff. The trial court concluded that, were it not for the Worker's Compensation provisions, Pan American had sufficiently shown the potential liability to the original plaintiff so as to justify a right of recovery in the event that a claim for indemnification was established. Since this case is in a summary judgment posture, the first duty of this court is to review the record to determine if there are genuine issues of material fact with respect to Pan American's liability to the original plaintiff. The reason for this inquiry is that Maddux would be entitled to summary judgment if the record discloses no issue of material fact upon the question of Pan American's liability to the original plaintiff.

The record is silent as to whether Pan American requested Maddux to defend the original action. During the course of settlement negotiations, Pan American did offer Maddux the opportunity to participate in the settlement. Maddux did not join in the settlement, and Pan American settled the original action for $72,000.00. The original plaintiff had initially sought a recovery of $751,500.00. There is no dispute as to these facts. There is a dispute, however, as to whether an independent-contractor defense could have been effectively urged. Maddux points to the well and lease service contract which provides that Maddux "shall be an independent contractor." Maddux then asserts an absence of any evidence to indicate that Pan American assumed control over the work so as to destroy that status. On the basis of these considerations, and with the support of case law indicating that an owner's liability for the negligence of his independent contractor does not extend to allow a recovery by the contractor's employees, Maddux urges that Pan American was not liable.

In order to determine whether there is a genuine issue of material fact as to Pan American's liability to the original plaintiff, we find it necessary to consider the applicable rules of law. In essence, Maddux contends that Pan American has the burden of proving its actual liability to the original plaintiff. We find the better-reasoned rule to be that if an indemnitor declines to approve a proposed settlement or to assume the burden of the defense, then the indemnitee is only required to prove a potential liability to the original plaintiff in order to support a claim against the indemnitor. *Parfait v. Jahncke Service, Inc.*, 5 Cir., 484 F.2d 296, 305 (1973); and *Morrissette v. Sears, Roebuck & Company*, 114 N.H. 384, 322 A.2d 7 (1974). See, *Chicago, R. I. & P. R. Co. v. Dobry Flour Mills, Inc.*, 10 Cir., 211 F.2d 785 (1954), cert. den. 348 U.S. 832, 75 S.Ct. 55, 99 L.Ed. 656. If there is no opportunity to either approve or defend, then the indemnitee must show actual liability to the original plaintiff. *Morrissette v. Sears, Roebuck & Company*, supra. In either event, the reasonableness of the settlement amount must be shown by the indemnitee. *Parfait v. Jahncke Service, Inc.*, supra. We note that a request to defend is not a prerequisite to fix liability, *Miller v. New York Oil Co.*, 34 Wyo. 272, 243 P. 118, 122 (1926), but it or a request to approve a settlement may be determinative of the indemnitee's burden of proof as to original liability. Any other rule would make the right to settle meaningless in cases where the indemnitor denies liability. *Chicago, R. I. & P. R. Co. v. Dobry Flour Mills*, supra. Nevertheless, the third-party defendant (indemnitor) must have the opportunity to show that the third-party plaintiff (indemnitee) was not liable to the plaintiff.

Under these guidelines, and since Maddux refused to approve a proposed settlement, it was Maddux's burden to show an absence of questions of fact as to Pan American's potential liability to the original plaintiff. Although there is a good deal of evidence to the contrary, the record reveals evidence that Pan American retained authority to direct Maddux as to substances used in a workover operation, and that the rig operator for Maddux had no question but that he had authority to use the con-

densate placed at the well-site by Pan American in the workover operation. These matters structure a jury question as to whether Pan American made a reasonable, prudent and good-faith settlement. At a trial on the merits, the jury should be instructed to consider the likelihood of a recovery against Pan American, as well as the reasonableness of the settlement amount. See, *Chicago, R. I. & P. R. Co. v. Dobry Flour Mills*, supra.

■ Finally, Maddux attempts to set up a dilemma by contending that if there was potential liability in the face of an independent-contractor defense, then Pan American would have been liable, at most, for its own negligence, thereby destroying any possibility of a breach of an independent duty by Maddux. This position tends to confuse the law of torts with the law of indemnification. Maddux's liability to Pan American, if any, is not to be determined by reference to Pan American's liability to the original plaintiff, but rather by reference to the independent obligations alleged to be owed by Maddux to Pan American. See, *Chicago, R. I. & P. R. Co. v. Dobry Flour Mills*, supra.

We hold that Maddux was not entitled to a summary judgment on the issue of Pan American's liability to the original plaintiff.

### EXPRESS CONTRACTUAL INDEMNITY

■ Pan American contends the trial court erred in failing to find that the provisions of the well and lease service contract were sufficient to establish an express contractual right to indemnity. The only evidence presented in connection with this issue was the contract itself. The only question, then, is whether the contract expressly grants a right of indemnity as a matter of law.

The contract provides in relevant part:

". . . Contractor will undertake [the jobs] . . . and thereafter carry them on with due diligence and in a good and workmanlike manner to completion . . . ." [Bracketed material added]

In addition, the contract contains an express indemnity provision with respect to "taxes, lienable claims, charges or impositions." The contract also expressly provides:

"It is understood that, by this provision, neither party is assuming any liability for the acts or omissions of the other party, except as stated in this contract."

We are unable to ascertain any express right of indemnity arising from this contract. Under the "workmanlike manner" clause, Maddux is liable for any work which is not completed in the designated manner, but this is different from a contract of indemnity. *Desert Steel Co., Inc. v. Superior Court, County of Maricopa*, 22 Ariz.App. 279, 526 P.2d 1077, 1079 (1974). This conclusion does not appear to affect the ability of Pan American to pursue its implied-indemnity claims. That question is not properly before us, however, and we made no decision in this respect. We simply hold that Maddux was entitled to summary judgment on Pan American's express-contractual-indemnity claim.

■ Finally, Pan American failed to present any cogent authority or argument with respect to a claimed error by the trial court in failing to find that Maddux had breached a duty to obtain insurance coverage for the incident in question. We, therefore, affirm that portion of the summary judgment.

The summary judgment is reversed in part and affirmed in part, and the case is remanded for a trial on Pan American's implied-indemnity claims.

RAPER, J., filed a dissenting opinion.

RAPER, Justice, dissenting.

I dissent.

The majority decision has rendered meaningless the concept of workmen's compensation that " '[i]n adopting the new system both employes and employers gave up something that they each might gain something else, and it was in the nature of a compromise; * * *.' " *Stephenson v. Mitchell, ex rel. Workmen's Compensation Depart-*

*ment,* Wyo.1977, 569 P.2d 95, quoting from *Zancanelli v. Central Coal & Coke Company,* 1918, 25 Wyo. 511, 173 P. 981. What they got was: " \* \* \* The right of each employee to compensation from such fund *shall be in lieu of and shall take the place of any and all rights of action* against any employer contributing as required by law to such fund *in favor of any person or persons* by reason of any such injuries or death," § 4, Art. X, Wyoming Constitution.

But now, through the employment of an artful manipulation of words, misdirection of legal hypotheses and disregard for the clear language of the constitution, the employer does not have the insurance he has paid for. The employee now may indirectly, through use of a third party go-between, obtain an additional recovery from the employer he could not obtain directly. When that is the case, then as observed by the trial judge, "it appears the constitutional immunity is nearly at an end."

I would have affirmed the district court.