MOUNTAIN FUEL SUPPLY COMPANY, a corporation, and Continental Casualty Company, a corporation, Appellants (Defendants below),

v.

Charles EMERSON, d.b.a. Emerson Well Service, Appellee (Plaintiff below).

No. 4838.

Supreme Court of Wyoming.

May 12, 1978.

G. G. Greenlee and R. Patrick Dixon, of Murane, Bostwick, McDaniel, Scott, Greenlee & Owens, Casper, for appellants.

G. J. Cardine, of Cardine, Vlastos & Reeves, Casper, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

This is an appeal from a summary judgment arising from a declaratory-judgment action having to do with the rights of Mountain Fuel Supply Company (Mountain Fuel) to indemnification from Charles Emerson, d. b. a. Emerson Well Service (Emerson). Emerson initiated the action, seeking a declaration that an indemnity provision of an agreement between the parties was void and unenforceable under § 30–28.3, et seq., W.S.1957, C.1967, 1975 Cum.Supp.[1] Mountain Fuel counterclaimed, asserting the provisions' validity and demanding that Emerson defend Mountain Fuel in a wrongful-death action arising out of the death of David K. Hillman, an Emerson employee. In addition, Mountain Fuel challenged the constitutionality of § 30–28.3, supra, in several respects. Summary judgment was rendered in favor of Emerson, declaring that the statute was constitutional; that Mountain Fuel was not, therefore, entitled to indemnity under the express or an implied agreement; and that Emerson had no obligation to appear, defend, respond in damages, or be obligated for any judgment in the *Hillman* case. The judgment will be reversed and the case remanded for determinations of fault, if any.

On October 9, 1971, the parties entered into a blanket agreement covering such work as might be done by Emerson ("the Contractor") for Mountain Fuel ("the Company") during the following three years. Mountain Fuel, a Utah corporation, was and is a public utility engaged in the production and transmission of natural gas. Emerson was, under the agreement, designated as an independent contractor. On March 21, 1972, Emerson was performing work on an oil and gas well for Mountain Fuel when a valve disengaged from a drilling rig and struck Hillman on the head, killing him. On March 21, 1974, Hillman's estate filed suit against Mountain Fuel, alleging certain negligent acts and omissions on its part. Pursuant to the indemnity provisions of their agreement, Mountain Fuel, by letter dated March 21, 1974, demanded indemnification from Emerson and St. Paul Insurance Company. On April 30, 1974, Emerson was joined by Mountain Fuel as a third-party defendant to the *Hillman* suit, but was subsequently dismissed by Mountain Fuel on June 26, 1974. In a separate action, by St. Paul Insurance Company against Mountain Fuel, St. Paul was relieved of any duties or liabilities, with respect to the *Hillman* suit, because of Mountain Fuel's failure to give timely notice. Thereafter, on March 8, 1976, Mountain Fuel again demanded indemnification

---

1. Section 30–28.3, W.S.1957, C.1967, 1975 Cum.Supp., provides:

 "Provisions for indemnity in certain contracts—Invalidity.—All agreements and all covenants or promises contained in, collateral to, or affecting any agreement pertaining to any well for oil, gas, or water, or mine for any mineral and which purport to indemnify the indemnitee against loss or liability for damages for

 "(a) Death or bodily injury to persons, or

 "(b) Injury to property, or

 "(c) Any other loss, damage, or expense arising under either (a) or (b) from

 "(i) The sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee or any independent contractor who is directly responsible to such indemnitee; or

 "(ii) From any accident which occurs in operations carried on at the direction or under the supervision of the indemnitee or an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee, are against public policy and are void and unenforceable. This provision shall not affect the validity of any insurance contract or any benefit conferred by the Workmen's Compensation Law of this state."

from Emerson. Emerson responded by filing this declaratory-judgment action.[2]

We are here concerned with the following issues:

1. Whether § 30–28.3, supra, is constitutional;
2. If so, whether the statute voids the parties' indemnity agreement in its entirety; and
3. Whether, alternatively, Mountain Fuel was entitled to implied contractual indemnity.

### FRUSTRATION OF CONTRACT

■ Before reaching the major issues, it is appropriate that we dispose of a point raised by Emerson in support of the summary declaratory judgment. Emerson contends that it was relieved of any duty to indemnify Mountain Fuel by virtue of the loss of benefits under the St. Paul insurance policy. This approach is essentially grounded on a frustration-of-contract theory which, if adopted, would avoid the necessity of reaching the remaining issues. Emerson reasons that since the parties' agreement provided for indemnity and the maintenance of insurance,[3] and since § 30–28.3 expressly provides that it does not affect the validity of any insurance contract, the loss of such insurance materially affects the parties' agreement on indemnity. Inherent in Emerson's argument is a belief that agreements, indemnifying the indemnitee from his own negligence, are valid under the statute *if* insurance is provided. While we are not at all sure about the efficacy of that position (see, *Crosby v. General Tire & Rubber Co.,* 5 Cir., 543 F.2d 1128, 1131), we are unable to reach that question in this case. The St. Paul insurance policy—apparently obtained pursuant to the agreement—is not in the record. We, therefore, have no idea what the insurance policy covered, or who were the named insureds. These factors are critical to any consideration of the effect of a loss of such insurance. We will not consider any matter upon which the record is silent. *Matter of Estate of Reed,* Wyo., 566 P.2d 587, 590; and *McCarthy v. Croker,* Wyo., 549 P.2d 323, 325–326. Accord, *Town of Jackson v. Shaw,* Wyo., 569 P.2d 1246.

### CONSTITUTIONALITY OF § 30–28.3

Mountain Fuel contends that § 30–28.3, supra, is violative of Article 1, §§ 6, 7 and 34, and Article 3, § 27, of the Wyoming Constitution, as well as the Fourteenth Amendment to the United States Constitution. In other words, Mountain Fuel asserts the statute violates equal protection standards, prohibitions against special laws, and principles concerning the freedom to contract.

#### A. *Equal Protection.*

■ The alleged violation of state and federal equal-protection clauses is grounded in Mountain Fuel's argument that § 30–28.-3, which voids certain indemnity agreements, applies only to the water well or mineral industries in the state. The appellant urges, therefore, that such a classification—which is not expressly applicable to other construction industries—is arbitrary, unreasonable, and unrelated to the purposes for which the act was passed. It is clear, according to the stance previously adopted by this court, that there must be some difference which furnishes a reasonable basis for different legislation as to different classes, and the differences must not be arbitrary and without just relation to the subject of the legislation. *United States Steel Corporation v. Wyoming Environmental Quality Council,* Wyo., 575 P.2d 749, 754;

**2.** It is noted that Mountain Fuel's insurer, Continental Casualty Co., was a named defendant below. Continental initially moved for dismissal, but later abandoned the motion, contending it made no difference to its rights and remedies whether or not it was a party.

**3.** The agreement provided in relevant part that:

"... The Contractor agrees to secure and maintain during the term of this contract, insurance in the kind and amounts as set forth in the Certificate of Insurance attached hereto denominated Exhibit 'B', referred to and incorporated herein by reference. The Contractor understands and agrees that . . . the completion and proper execution of said certificate is a condition precedent to the performance of any work done or undertaken during the term of this agreement. . . . ."

*Bell v. Gray,* Wyo., 377 P.2d 924, 926; and *Miller v. Board of County Commissioners,* 79 Wyo. 502, 337 P.2d 262, 269. Accord, *Schakel v. State,* Wyo., 513 P.2d 412, 414. One who assails a classification must carry the burden of showing that it does not rest on a reasonable basis, but is essentially arbitrary. *Bell v. Gray,* supra; and *In re Trent's Claim,* 68 Wyo. 146, 231 P.2d 180, 185. If any state of facts can be reasonably conceived which sustain the classification, such facts will be assumed. *In re Trent's Claim,* supra; and *Steffey v. City of Casper,* Wyo., 357 P.2d 456, reh. den. 358 P.2d 951.

■ We must reject Mountain Fuel's claim to the effect that for the statute to be ·held valid it must be applicable to all contracts that contain the prohibited indemnity agreements. We find that there is a reasonable basis for the classification, particularly when we consider that in meeting the difference requirement, the legislature is not required to nullify indemnity agreements in every area where their use might be considered contrary to the public interest.

It is generally known that the minerals industry is the single most dominant economic factor in the state.[4] There were projected to be 22,991 workers in the "Mining" sector in Wyoming in 1977, representing 11.5% of the total state work force. Mining employment figures were exceeded only by the services, trade and government sectors.[5] The growing significance of energy development in the state, and the parallel increase in the relative importance of mining employment are also noted.[6] It is also generally known that the drilling and completion of oil and gas wells is always a hazardous undertaking (*Pan American Petroleum Corporation v. Like,* Wyo., 381 P.2d 70, 74), and that it can be characterized as a particularly hazardous type of work.

While it is conceded that hazardous work also occurs in other industries—such as the general construction industry—this is not to say that the legislature is barred from addressing a significant portion of the problem. In *Illinois Coal Operators Association v. Pollution Control Board,* 59 Ill.2d 305, 319 N.E.2d 782, 786, the Illinois Supreme Court upheld environmental noise regulations which exempted sounds emitted by construction equipment but not identical equipment used in mining, saying:

"We would also remark that so far as legislative classification is concerned, it has been recognized that evils in the same field may be of different dimensions and reform may take place one step at a time. The legislature may address itself to one stage of a problem and not take action at the same time as to other phases. *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563; *McDonald v. Board of Election Com'rs,* 394 U.S. 802, 809, 811, 89 S.Ct. 1404, 22 L.Ed.2d 739; *Chicago Allis Manufacturing Co. v. Metropolitan Sanitary District,* 52 Ill.2d 320, 331, 288 N.E.2d 436; *W. F. Hall Printing Co. v. Environmental Protection Agency,* 16 Ill.App.3d 864, 306 N.E.2d 595."

These principles were subsequently applied by the Illinois Supreme Court in upholding a statute which made void any agreement indemnifying one against his own negligence in construction contracts. *Davis v. Commonwealth Edison Co.,* 61 Ill.2d 494, 336 N.E.2d 881. It was noted in *Davis* that at least three other states, California, Michigan and New York had similar statutes.[7]

---

4. 1977 Wyoming Mineral Yearbook, Mineral Division, State Department of Economic Planning and Development, at p. 3 (January, 1978).

 We take judicial notice of these various legislative facts since the question herein relates primarily to the reasonableness of the legislative response—which should be determined on the basis of available facts. See, McCormick on Evidence, § 331 (2nd ed. 1972). Rule 201., W.R.E., does not control this species of judicial notice.

5. 1977 Wyoming Mineral Yearbook, supra, citing Report Number 4, "Population and Employment Projections for Wyoming Counties," Economic Research Unit of the State Planning Coordinator's office (October, 1977).

6. Report Number 4, supra, at pp. 3–5.

7. See, Cal.Civ.Code, § 2782 (West); Mich.Stat. Ann., § 26.1146(1) [M.C.L.A. § 691.991]; and N.Y.Gen.Oblig. Law, § 5–324 (McKinney). Mississippi can also be added to the list. Miss. Code Ann. § 31–5–41 (1972).

To date, none have been found constitutionally infirm. We hold that § 30–28.3, supra, does not violate the state or federal equal-protection clauses.

### B. *Special Legislation.*

█ The prohibition against special legislation does not mean that a statute must affect everyone in the same way. It only means that the classification contained in the statute must be reasonable, and that the statute must operate alike upon all persons or property in like or the same circumstances and conditions. *Nation v. Giant Drug Company,* Wyo., 396 P.2d 431, 434; and *State v. Sherman,* 18 Wyo. 169, 105 P. 299, 300. See also, *May v. City of Laramie,* 58 Wyo. 240, 131 P.2d 300, 306; and *Davis v. Commonwealth Edison Co.,* supra. We have already explained why we believe the statute sets forth a reasonable classification. The operation of the statute equally affects all of the objects within that classification—there being no discernible exceptions within the water well and mineral industries. Both requisite factors are met and, therefore, the statute is considered a general law. See, *Standard Cattle Company v. Baird,* 8 Wyo. 144, 56 P. 598; and *McGarvey v. Swan,* 17 Wyo. 120, 96 P. 697. See also, *Davis v. Commonwealth Edison Co.,* supra.

### C. *Freedom of Contract.*

█ Generally, the making of contracts shall be free from governmental interference, but contract rights are not absolute. *Bulova Watch Company v. Zale Jewelry Company,* Wyo., 371 P.2d 409, 419. Where restrictions are placed on such rights—through an exercise of the police power of the legislature—we must determine whether they are reasonable and within the scope of the police power. *State v. Langley,* 53 Wyo. 332, 84 P.2d 767, 770–771. Since indemnity agreements are widely used in construction-related industries, the legislature may have considered that such use removed or reduced the incentives to protect workers and others from personal injury and for these reasons declared them to be against public policy. See *Davis v.*

*Commonwealth Edison Co.,* supra. As noted in *Davis:*

"... The statute would thwart attempts to avoid the consequences of liability and thereby insure a continuing motivation for persons responsible for construction activities to take accident prevention measures and provide safe working conditions. ..."

To attempt to achieve such purposes by voiding certain indemnity agreements is certainly reasonable and within the purpose of the police power. Finally, the statute has only an incidental effect on the main agreement between the parties. Where this is the case, and the state interest in adopting the statute is significant, no constitutional infirmity arises with respect to the freedom to contract. See, *Brda v. Chrysler Corporation,* 50 Mich.App. 332, 213 N.W.2d 295 (wherein the Michigan statute concerning indemnification clauses in construction contracts was considered).

### APPLICATION OF § 30–28.3

Having determined that the statute is constitutional, we turn to Mountain Fuel's alternative contention that the statute should be construed so as to void only those indemnity provisions whereunder Mountain Fuel seeks protection from its own active negligence. Mountain Fuel reasons that if this construction is adopted, there would still be an enforceable indemnity provision in the parties' agreement to the extent that the indemnitee is either found not negligent or is found only passively negligent. Emerson, on the other hand, contends that the statute voids the indemnity agreement as a whole. In other words, Emerson contends that the statute renders Mountain Fuel liable to the plaintiff in the negligence action, even though the fact-finder were to determine that Emerson's negligence was a cause of the injury, while, at the same time, finding Mountain Fuel to be free of negligence. In order to satisfactorily answer these contentions, we find it advisable to first consider the language of the statute and the agreement separately, and then compare the results.

### A. *The Statute.*[8]

Mountain Fuel's contention calls on this court to find that the statute voids only those agreements which seek to indemnify the indemnitee for his own *active* negligence. While we agree that the statute's application should be limited to agreements seeking to indemnify the indemnitee for his own negligence, we fail to see how this plain language of the statute can be construed to distinguish its application on the basis of the *character* and degree of an indemnitee's negligence.

 The statute expressly states that it applies to *any* agreement or covenant which seeks to indemnify the indemnitee against liability for death or injury arising from the *sole or concurrent* negligence of the indemnitee, *or* from any operation carried on at the *direction* of, under the *supervision* of, or in accordance with methods and means *specified* by the indemnitee. While such language evidences an intent that the statute not apply to indemnification agreements with respect to the indemnitor's negligence—there being no reference to such agreements (*Town of Pine Bluffs v. State Board of Equalization,* 79 Wyo. 262, 333 P.2d 700), there is no indication that the character of the indemnitee's negligence is of any importance. The preamble to the act buttresses this conclusion when it provides for:

> "AN ACT invalidating, as against public policy, provisions for indemnity in certain contracts *where there is negligence attributable to the indemnitee,* and providing an exemption thereto." [Emphasis supplied] S.L. of Wyoming 1969, Chapter 46, § 1.

Where language of a statute is plain, unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of construction. *Wyoming State Treasurer v. City of Casper,* Wyo., 551 P.2d 687, 698. We hold that the clear language of the statute voids and makes unenforceable any agreement to the extent that it seeks to indemnify an indemnitee for his own negligence—regardless of the character of the negligence sought to be protected.[9]

### B. *The Agreement.*[10]

The contract provision in question provides in relevant part:

> ". . . *Contractor shall also be liable for any and all claims arising from injury to employees of Contractor or injury to any sub-contractor or employees of such sub-contractor arising from the performance of work hereunder; and Contractor shall also be liable for any injury to employees of the Company and all other persons or their property caused by an act or omission of the Contractor, its servants, agents or employees;* and Contractor hereby agrees to indemnify and hold Company harmless from any and all losses, claims, demands, damages, costs, loss of services, expenses, actions, and causes of action of every nature or character whatsoever, whether subrogated or otherwise, which may arise or may be claimed to have arisen out of or in connection with the performance of the work hereunder by the Contractor, *and specifically agrees to indemnify and hold Company harmless of and from any and all claims, actions, demands, damages, costs (Including legal fees), expenses and causes of action of every nature or character whatsoever which may arise directly or indirectly from Contractor's operations.* . . ." [Emphasis supplied]

As structured, these provisions set forth two assignments of liability:

1. The Contractor (Emerson) is liable for all injuries to his own employees and subcontracting personnel—regardless of who caused the injury.
2. The Contractor (Emerson) is liable for all injuries to the Company's (Moun-

---

8. It is noted that § 30–28.3 was amended in 1977. Session Laws of Wyoming 1977, chapter 145, § 1. The amended version—which has no effect on this case, can now be found at § 30–1–131, W.S.1977.

9. The Wyoming statute can be profitably compared with the other statutes referred to in Footnote 7. These statutes often refer only to the sole negligence or willful misconduct of the indemnitee. With respect to the California statute, there is a question as to whether the risk of loss can be shifted from indemnitee to indemnitor when both are negligent. Conley & Sayre, "Indemnity Revisited: Insurance of the Shifting Risk." 22 Hastings L.J. 1201, 1212–1213 (1971).

10. For background material on the construction of indemnity agreements, see Annot., 68 A.L.R.3d 7 (1976).

tain Fuel's) employees and all other persons—caused by acts or omissions of the Contractor.

Since Hillman was an Emerson employee, we are only concerned with the first assignment of liability. The remaining provisions set forth a broad, all-inclusive indemnification agreement. The language, then, which is primarily applicable to this case is that italicized portion which is once underlined.

All of the applicable language is general in character. The question raised is whether such language can be construed to mean that the indemnitee was seeking indemnification for his own negligence. It has been said that such broad, all-inclusive language is not sufficient to impose liability on an indemnitor for the indemnitee's own negligence. 41 Am.Jur.2d, Indemnity, § 15, at 700. Although it makes little difference to the result of this case, we prefer the California approach which concludes that

"[w]hile such clauses may be construed to provide indemnity for a loss resulting from an indemnitee's *passive* negligence, they will not be interpreted to provide indemnity if an indemnitee has been *actively* negligent. . . ." *Herman Christensen & Sons, Inc. v. Paris Plaster Co.,* 61 Cal.App.3d 237, 132 Cal.Rptr. 86, 93.

See, also, *Gonzales v. R. J. Novick Const. Co., Inc.,* 144 Cal.Rptr. 408, 575 P.2d 1190. That the parties intended some degree of indemnity from the indemnitee's own negligence is clear from a reading of other portions of the agreement. For example, the twice-underscored portion of the italicized portion of the agreement assigns liability to the indemnitor in certain situations, but only when the injury is caused by the indemnitor. Another portion of the liability provisions—not directly relevant here—assigns liability to Emerson for injury to Mountain Fuel's property, *except* when the injury was caused directly by Mountain Fuel employees. If the parties had intended to restrict Emerson's liability for injuries to its own employees, they could have easily added such limiting language. Failing this, we must find that the parties intended to provide Mountain Fuel with indemnification for its own negligence. Whether the

coverage of such indemnification extended only to passively-negligent acts, on the part of the indemnitee, is not important in light of the clear language of § 30–28.3, supra.

C. *Application.*

Since we find that § 30–28.3 makes unenforceable any agreement which seeks to indemnify the indemnitee for his own negligence—regardless of the character of that negligence—and since the parties' agreement sought to achieve that result, we hold that the agreement is void to the extent of such indemnification. To this extent we are in agreement with the district court's conclusions. We also agree that if an express indemnity provision—such as the one in this case—is against public policy, so must an implied indemnity agreement in this case be against public policy. On the basis of these conclusions, the district court found:

"4. Indemnity is not potentially available to Mountain Fuel under any of the points listed above.

"5. *Emerson has no obligation to indemnify,* nor any obligation to appear, defend, respond in damages, or be obligated for any judgment in the *Hillman* case." [Emphasis supplied]

We are unable to agree that Emerson has *no* obligation to indemnify.

Although the parties' agreement may be void to the extent that it attempted to indemnify Mountain Fuel from its own negligence, *this is not to say that the agreement is void to the extent that it implicitly sought to indemnify Mountain Fuel from Emerson's negligence.* Such an agreement is not prohibited by § 30–28.3, supra. As a result, if Mountain Fuel is found not negligent, and Emerson is found negligent, for Hillman's injuries, then Mountain Fuel is entitled to indemnification for its costs and legal fees—as provided in the parties' agreement.

### DISPOSITION OF APPEAL

The district court's judgment is reversed. Since the court rendered no findings on the issues of the relation of Emerson's negli-

gence, if any, and Mountain Fuel's negligence, if any, in the Hillman wrongful-death case, we remand the case for such findings as are necessary for a fully dispositive declaratory judgment in this matter.

We note, as did the Supreme Court of California in *Goldman v. Ecco-Phoenix Electric Corporation,* 62 Cal.2d 40, 41 Cal. Rptr. 73, 396 P.2d 377, that the trial in this declaratory-judgment action will duplicate aspects of the negligence issues which will arise in the *Hillman* action. Such duplication may be avoided by the stipulation of all of the parties, with the approval of the trial court, for a consolidation of the two trials. Such a consolidation, pursuant to Rule 42(a), W.R.C.P., should be considered an instance in which the actions are tried together, but retain their separate character and require the entry of separate judgments. See, *Bard Ranch, Inc. v. Weber,* Wyo., 538 P.2d 24, 39, reh. den., Final Proofs of Appropriation of Following Water Rights, Wyo., 541 P.2d 791.

Reversed and remanded.