Gerald HECKART and Donald L. Bynon, guardians of Wilfred L. Baker, Plaintiffs,

v.

VIKING EXPLORATION, INC., Defendant, Third-Party Plaintiff, and Appellant,

v.

SUPERIOR DRILLING, INC., a corporation, and Kenai Drilling, Ltd., a Delaware corporation, Third-Party Defendants and Appellees.

No. 79–2284.

United States Court of Appeals, Tenth Circuit.

March 18, 1982.

W. W. Reeves of Vlastos & Reeves, Casper, Wyo., for Viking Exploration, Inc.

R. Patrick Dixon of Murane & Bostwick, Casper, Wyo. (R. R. Bostwick and James W. Owens of Murane & Bostwick, Casper, Wyo., with him on the brief), for Superior Drilling, Inc., and Kenai Drilling, Ltd.

Before SETH, Chief Judge, HOLLOWAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Viking Exploration, Inc. (Viking) brought this third-party action against Superior Drilling, Inc. (Superior)[1], seeking indemnity for any sums Viking would have to pay as the result of a personal injury suit one of Superior's employees brought in federal court against Viking. Viking then settled the personal injury suit and sought to recover the amount of its settlement. The trial court ruled that Viking was not entitled to indemnity. When Viking appealed, we remanded for further proceedings in light of subsequent Wyoming Supreme Court decisions interpreting applicable Wyoming law. Upon remand the trial court again denied relief. In this second appeal Viking contends that contrary to the trial court's holding, Wyoming law does not bar its indemnity action. To resolve the issues on appeal we must consider an indemnity provision in the contract between the parties, a Wyoming statute limiting the validity of indemnity contracts, and Wyoming law on other issues affecting indemnity.

In December 1973 the two parties entered into a contract calling for Superior to drill an oil well on a Wyoming lease Viking held. Superior began drilling activities immediately. On February 16, 1974, Viking told Superior to plug and abandon the well. That afternoon, while in the process of plugging the well, Wilfred Baker, one of Superior's crew members, was badly injured when struck by heavy machinery set in motion by another crew member's catching his sleeve on a lever. Baker sued Viking, his complaint asserting that Viking was liable because it was the master having the right to control the negligent employee (*respondeat superior*) and because Viking was itself negligent in several respects including failing to provide a safe work place, permitting unsafe equipment on the site, and selecting an incompetent operator to conduct the drilling operations. Baker also sued two of Superior's officers, but did not sue Superior itself because Wyoming's worker's compensation law bars employer liability. Relying on a provision for indemnity in the contract between the parties, Viking requested that Superior assume its defense. When Superior refused, Viking brought this third-party claim for indemnity based upon contractual and common law theories.

Superior's two officers settled with Baker for $50,000. Baker, who had sued Viking for $2,520,000, then offered to settle with Viking for another $50,000. When Viking

---

1. Kenai Drilling, Ltd. was added as a party because it acquired ownership of Superior Drilling, Inc. after the accident in this case. The record is unclear whether Superior operates as a division or subsidiary of Kenai. In this opinion we will treat Superior as still in existence and the proper defendant, as did the trial court.

informed Superior of Baker's settlement offer, Superior responded that it considered the $50,000 offer as reasonable and that if Viking refused to settle for that sum, in a subsequent indemnity claim Superior would argue that Viking had inadequately protected Superior's interests.[2] Viking then accepted Baker's $50,000 settlement offer.

In its third-party complaint against Superior, Viking relies upon the indemnity clause in its contract with Superior, the contract clause requiring Superior to perform in a workmanlike manner, common law rights of indemnity, and rights of contribution based on comparative fault. The trial court held that Wyo.Stat.Ann. § 30–28.3 (current version at Wyo.Stat.Ann. § 30–1–131) entirely voids the contractual commitments and that Superior is not liable for the damages resulting from its employee's injury on either a common law indemnity or contribution theory because Wyoming's Worker's Compensation Act provides a complete bar.[3]

In the first appeal we remanded for further consideration in light of *Pan American Petroleum Corp. v. Maddux Well Service,* 586 P.2d 1220, 1223–24 (Wyo.1978), and *Mountain Fuel Supply Co. v. Emerson,* 578 P.2d 1351, 1358 (Wyo.1978). *See Baker v. Viking Exploration, Inc.,* No. 78–1344 (10th Cir. June 14, 1979). On remand the trial court expressed its uncertainty about how to proceed but, after an in-chambers discussion with the attorneys for both sides, issued an order dismissing Viking's claims. The court concluded that Viking had voluntarily settled its claim with Baker, and it declined to disturb the voluntary settlement. This second appeal followed. We now remand again, but this time we will give the trial court more specific guidance.

## I

We first focus upon the indemnity provision in the contract between the parties. It provides, in section 18.10, as follows:

"Indemnity by Contractor: Contractor agrees to protect, indemnify and save harmless the Owner from and against all claims, demands, and causes of action in favor of Contractor's employees or third parties on account of personal injuries or death or on account of property damages (other than property damages as in this Par. 18 specifically provided for) arising out of the work to be performed by Contractor hereunder and resulting from the negligent acts or omissions of Contractor, Contractor's agents, employees, and subcontractors."

---

**2.** By letter Superior's attorney responded as follows:

"Pursuant to your advice to me this morning that plaintiff will settle with you for the sum of $50,000.00, I advise as follows:

"Superior Drilling, Inc., being isolated from the plaintiff under a mantle of Workmen's Compensation, finds itself facing an indemnity by (sic) Viking. The present offer of the plaintiff, assuming it to be a bona fide one, at $50,000 would be a reasonable settlement of plaintiff's claim against Viking and Superior feels that same should be accepted as a limiting factor on the amount of damages that could be claimed in the case. Superior would stipulate the sum of $50,000.00 as a reasonable measure of damages to be litigated or compromised in the action for indemnity. "Superior would consider the loss of existing settlement by Viking resulting in damages of a greater amount to be unacceptable and would contest any excess above $50,000.00 as an inadequate protection of Superior's interest in the indemnity action where the

process of settlement is under the exclusive control of Viking with the plaintiff.

"Superior will respond to your demands for contribution relative to indemnity action in due course as I have relayed same to my principal."

**3.** Wyo.Stat.Ann. § 27–50 (1957) was in effect when Baker was injured. It provided: "The right of each employee to [worker's] compensation ... shall take the place of any and all rights of action ... in favor of any such person or persons ...." Article 10, Section 4 of the Wyoming Constitution contains the same restriction, though omitting the word "such" from "any such person or persons." *Pan Am. Petroleum Corp. v. Maddux Well Serv.,* 586 P.2d 1220, 1224 (Wyo.1978), discusses the two provisions and reconciles their phrasing. Section 27–50 has been amended, and the current version is at Wyo.Stat.Ann. § 27–12–103. A 1975 amendment dropped the word "such," 1975 Wyo.Sess.Laws ch. 149, § 1, but apparently not for the purpose of changing the substantive law.

■ That provision at least requires Superior to indemnify Viking for any claim made by a Superior employee because of an accident resulting solely from the negligence of Superior or its employees. If it is read more broadly to indemnify against an accident in which Viking's negligence [4] was the sole or a concurrent cause, it is invalid under Wyoming law. *Mountain Fuel Supply* held that Wyo.Stat.Ann. § 30–28.3 (1975) [5] makes unenforceable any oil and gas drilling contract to the extent it "seeks to indemnify the indemnitee for his own negligence—regardless of the character of that negligence." 578 P.2d at 1358.

■ Superior asserts that even if Viking settled the case not because of its own negligence but because it feared it would be found vicariously liable, section 30–28.3 still bars indemnity. As we have explained before,

"A crucial difference exists between liability as master (*respondeat superior*) and direct liability. *Respondeat superior* is a doctrine of vicarious liability based upon public policy—the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way. *See* Holmes, *The History of Agency*, 4 *Harv. L.Rev.* 345 (1882)."

4. Since Viking is a corporation, and a corporation acts only through its officers, employees and agents, Viking's "own" negligence is by imputation from the acts or omissions of the individuals serving it. In this opinion we continue to refer to "Viking's negligence" as if Viking was an individual, to distinguish its responsibility for the negligence of its regular employees from the liability that might be imputed to Viking under the *respondeat superior* doctrine because of its right to control the activities of the negligent Superior employee.

5. Wyo.Stat. § 30–28.3 (1975) then provided:
"Provisions for indemnity in certain contracts—Invalidity.—All agreements and all covenants or promises contained in, collateral to, or affecting any agreement pertaining to any well for oil, gas, or water, or mine for any mineral and which purport to indemnify the indemnitee against loss or liability for damages for
"(a) Death or bodily injury to persons, or
"(b) Injury to property, or

*McClelland v. Facteau*, 610 F.2d 693, 695 (10th Cir. 1979). Superior relies upon *Reding v. Texaco, Inc.*, 598 F.2d 513, 520–21 (9th Cir. 1979), which interprets the Wyoming statute as voiding an indemnity agreement when the indemnitee, though not negligent, is liable under the doctrine of *respondeat superior.* We do not agree with that construction of the statute. While subsection (ii) of the statute precludes indemnity from accidents in operations "carried on at the direction or under the supervision of the indemnitee ... or in accordance with methods and means specified by the indemnitee," the act's preamble reads as follows:

"AN ACT invalidating, as against public policy, provisions for indemnity in certain contracts where there is negligence *attributable to* the indemnitee, and providing an exemption thereto."

1969 Wyo.Sess.Laws ch. 46, § 1 (emphasis added). Despite *Reding*'s view to the contrary, we think "attributable to" was intended to mean the negligence "of" the indemnitee. Construing the statute to preclude indemnity only when the indemnitee was negligent is more consistent with the Wyoming Supreme Court's opinion in *Mountain Fuel Supply. See* 578 P.2d at 1357. Such a reading is also consistent with

"(c) Any other loss, damage, or expense arising under either (a) or (b) from
"(i) The sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee or any independent contractor who is directly responsible to such indemnitee; or
"(ii) From any accident which occurs in operations carried on at the direction or under the supervision of the indemnitee or an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee,
are against public policy and are void and unenforceable. This provision shall not affect the validity of any insurance contract or any benefit conferred by the Workmen's Compensation Law of this state."
This section was amended in 1977 and can now be found at Wyo.Stat. § 30–1–131. As subsequently discussed in this opinion, the amendment clarifies the operation of the statute.

the Wyoming legislature's amendment to the statute in 1977, when it added the following words to the end of subsection (ii): "to the extent that such contract of indemnity by its terms purports to relieve the indemnitee from loss or liability for his own negligence." 1977 Wyo.Sess.Laws ch. 145, § 2. We think the amendment clarified rather than changed the law.

A problem in the instant case is that Baker's complaint against Viking asserted one theory of recovery (vicarious liability) on which Viking would be entitled to indemnity under the agreement, and several theories based upon the negligence of Viking, which would be outside the contractual provision as it is permitted to operate under Wyoming law. Because the case was settled, the grounds, if any, on which Viking was liable were never judicially determined.

The view of Superior, apparently accepted by the trial court, is that since Viking settled a suit based in part on a theory for which no indemnity is proper, the settlement must be regarded as having discharged Viking's own liability for which no indemnity is proper against Superior. If we upheld this view we would discourage settlements, because no defendant would be entitled to indemnity if it settled a case in which a plaintiff asserted a theory not covered by the indemnity agreement.

Viking, on the other hand, appears to take the position that since one of the theories asserted against it is covered by the indemnity agreement, Superior's refusal to defend permits Viking to settle the case and to hold Superior for the full amount of the settlement even if Viking principally feared liability on a ground not covered by the indemnity provision. If we upheld this view an indemnitor denying liability would have to assume the defense even though some of the plaintiff's theories were clearly not covered by the agreement—an onerous burden fraught with the possibility of conflict of interest. *See Waite v. Aetna Cas. and Surety Co.*, 77 Wash.2d 850, 467 P.2d 847 (1970).

One of the holdings of *Pan American Petroleum* is that by settling rather than contesting a suit, a party does not necessarily lose any right it had to indemnity. There the Wyoming Supreme Court held that if an indemnitee gives the indemnitor the opportunity to approve the settlement or defend the suit and the indemnitor declines, the indemnitee may settle and then recover the settlement amount by proving that it was potentially liable to the party with whom it settled and that the settlement amount was reasonable. 586 P.2d at 1225.

■ In our view, when theories both within and without the indemnity agreement are asserted against the indemnitee (Viking), and the indemnitor (Superior) does not assume the defense of the claims within the contract's coverage, the indemnitee may settle for a reasonable amount and then recover that amount from the indemnitor by showing it was not liable on any theory outside the indemnity agreement and was potentially liable on a theory covered by the agreement. *See Employers Mut. Liab. Ins. Co. v. Hendrix*, 199 F.2d 53 (4th Cir. 1952); *Waite v. Aetna Cas. and Surety Co.*, 77 Wash.2d 850, 467 P.2d 847 (1970). The reasonableness of Viking's settlement amount in the instant case cannot be disputed since Superior's counsel conceded as much.[6]

■ Thus the issues to be decided upon remand are whether Viking can show it was not negligent but was potentially liable on the *respondeat superior* theory for the negligence of Superior's employee. If it makes that showing, it is entitled to indemnity according to its contract with Superior.

II

■ Viking's claim based upon the contractual provision that Superior would drill the well in a workmanlike manner supplies no additional ground for liability. To the extent such a provision can be read to shift liability for Viking's own negligence, we agree with the Ninth Circuit that it is

**6.** *See* note 2 *supra*.

barred by Wyo.Stat.Ann. § 30–28.3. *See Reding*, 598 F.2d at 521. To the extent this contractual obligation to perform in a workmanlike manner would make Superior liable for losses Viking incurred when Viking was not negligent, it duplicates the indemnity provision and is therefore unnecessary.

## III

■ With respect to Viking's claim for contribution based upon a common law theory, we conclude it would be barred because of Wyoming's Worker's Compensation Act. That Act provides for a right to contribution only "where two (2) or more persons become jointly or severally liable in tort for the same injury . . . ." Wyo.Stat.Ann. § 1–1–110.[7] Because under Wyoming's Worker's Compensation Act the employer was never jointly or severally liable in tort for its employee's injury, we think Wyoming would not recognize a third party's right to contribution from the employer for the employee's injury. *See* 2A A. Larson, *The Law of Workmen's Compensation* § 76.21 (1976) (no contribution the majority rule). The Wyoming federal district court has previously reached this conclusion. *Shields v. Bechtel Power Corp.*, 439 F.Supp. 192, 194 (D.Wyo.1977).

## IV

Viking's last claim is for indemnity as a common law right. Wyoming has previously recognized common law rights of indemnity. *Miller v. New York Oil Co.*, 34 Wyo. 272, 243 P. 118, 121 (1926).[8] Since an express contractual provision between the parties permits Viking to recover indemnity against Superior if Viking's only liability is upon a *respondeat superior* theory, we do not have to decide here whether the common law would also permit such recovery. However, we must consider whether Wyoming would allow indemnity under a common law theory if the trial court finds Viking was negligent. The trial court

would likely find that any negligence on the part of Viking was of the secondary variety—a failure to inspect or a failure to prevent—while the negligence of Superior's employee was the primary cause of the accident, fitting traditional notions of the right to indemnity at common law. *See, e.g., United Air Lines, Inc. v. Wiener*, 335 F.2d 379, 398–401 (9th Cir.), *cert. denied*, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964); *Hartford Accident & Indemn. Co. v. R. Herschel Mfg. Co.*, 453 F.Supp. 1375, 1379 (D.N.D.1978); W. Prosser, *The Law of Torts* 310–13 (4th ed. 1971).

Viking is claiming indemnity from the injured party's employer. Courts are divided over whether worker's compensation should protect an employer from an indemnity claim—a question termed "the most evenly balanced controversy in all of workmen's compensation law." Annot., 100 A.L. R.3d 350, 354 (1980). The Wyoming Supreme Court has specifically saved that issue for a case that squarely presents it. *Pan American Petroleum*, 586 P.2d at 1224.

The question of common law indemnity arises in the case before us in the context of an oil well drilling agreement; thus we must again consider Wyo.Stat.Ann. § 30–28.3. By its terms that statute only prohibits a contract provision that grants indemnity from one's own negligence. But *Mountain Fuel Supply* declared

> "We also agree that if an express indemnity provision—such as the one in this case—is against public policy, so must an implied indemnity agreement in this case be against public policy."

578 P.2d at 1358.

■ Common law indemnity does not rest directly on an implied contract theory; rather, it rests upon an unjust enrichment, restitutional theory. *See United Airlines v. Wiener*, 335 F.2d at 398–99. Nevertheless, we believe that if the Wyoming Supreme

---

7. Section 1–1–110 is the current codification and is not significantly different from section 1–7.3, the section that was in effect when Baker was injured. *See* 1973 Wyo.Stat.Ann. ch. 67, § 1.

8. Wyoming's change to comparative negligence did not affect indemnity rights. Wyo.Stat. § 1–1–110(f).

Court addressed the question of common law indemnity as it pertains to mining and drilling agreements, it would give effect to the public policy expressed in Wyo.Stat. Ann. § 30–28.3. Since an express contract provision may not lawfully provide indemnity for Viking's negligence "regardless of the character of the negligence sought to be protected", *Mountain Fuel Supply*, 578 P.2d at 1357, then the Wyoming court would not allow Viking indemnity for its own negligence under a common law theory.

The case is hereby reversed and remanded for further proceedings consistent with this opinion.