**STATE of Wyoming ex rel. the WYOMING ASSOCIATION OF CONSULTING ENGINEERS AND LAND SURVEYORS, a Wyoming corporation; the Wyoming Chapter of the American Institute of Architects, a Wyoming association; the Wyoming Health Care Association, a Wyoming corporation; the Wyoming Hospital Association, a Wyo-**

ming corporation; the Wyoming Medical Society, a Wyoming corporation; John D. Bailey, M.D., individually; and the Wyoming Society of Certified Public Accountants, a Wyoming corporation, Petitioners,

v.

Michael J. SULLIVAN, Governor of the State of Wyoming, Respondent.

No. 90–28.

Supreme Court of Wyoming.

Oct. 9, 1990.

Richard Rideout of Herschler, Freudenthal, Salzburg, Bonds & Rideout, P.C., Cheyenne, for petitioners.

Joseph B. Meyer, Atty. Gen., and Sylvia Lee Hackl, Sr. Asst. Atty. Gen., for respondent.

George Santini of Graves, Santini & Villemez, P.C., Michael Bruce Rosenthal of Hathaway, Speight, Kunz, Trautwein & Barrett, and Robert W. Tiedeken of Wolf & Tiedeken, Cheyenne, for amicus curiae Wyoming Trial Lawyers Ass'n.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

MACY, Justice.

Petitioners seek the issuance of a writ of mandamus compelling Respondent Michael J. Sullivan, Governor of the State of Wyoming, to appoint a director to execute and implement the Wyoming Professional Review Panel Act. Wyo.Stat. §§ 9–2–1801 to –1812 (1977).

We hold that the Wyoming Professional Review Panel Act is unconstitutional and deny Petitioners' Petition for Writ of Mandamus.

Petitioners present the following dispositive issues in a memorandum in support of their petition:

I. Whether the Petitioners have standing to seek issuance of a Writ of Mandamus from this Court to compel the Respondent to execute and implement the Wyoming Professional Review Panel Act?

II. Whether the Wyoming Professional Review Panel Act is a violation of either the Constitution of the United States or of the Constitution of the State of Wyoming?

In 1988, this Court declared that the Wyoming Medical Review Panel Act, Wyo. Stat. §§ 9–2–1501 to –1511 (1977), was unconstitutional, because it violated equal protection rights guaranteed by the Wyoming Constitution. *Hoem v. State*, 756 P.2d 780 (Wyo.1988). We employed the equal protection analysis utilized in *Mountain Fuel Supply Company v. Emerson*,

578 P.2d 1351 (Wyo.1978), where this Court stated:

"[T]here must be some difference which furnishes a reasonable basis for different legislation as to different classes, and the differences must not be arbitrary and without just relation to the subject of the legislation."

*Hoem*, 756 P.2d at 782 (quoting *Mountain Fuel Supply Company*, 578 P.2d at 1354). We first examined the state interest intended to be furthered by the Wyoming Medical Review Panel Act and declared:

[T]he legislature has a legitimate interest in protecting the health of the citizens of Wyoming as well as the economic and social stability of the state.

*Hoem*, 756 P.2d at 783. Second, we examined the issue of whether the legislation was a "reasonable and effective means" of effectuating the legitimate state interest. *Id.* We emphasized the principle that " '[t]he continued availability and vitality of * * * causes of action [against health care providers] serve an important public policy—the preservation of quality health care for the citizens of this state,' " *id.* (quoting *Greenwood v. Wierdsma*, 741 P.2d 1079, 1088 (Wyo.1987)), and held that the Wyoming Medical Review Panel Act was not rationally related to the state's interest in protecting public health or economic and social stability.

The Wyoming Legislature subsequently enacted legislation which was designed to establish a pretrial screening procedure for a broader scope of malpractice claims. 1989 Wyo.Sess.Laws ch. 262. Section 1 of that chapter provided for a screening procedure which could be established by the Wyoming Supreme Court. Wyo.Stat. § 1–1–124 (1977). Section 5(b) of that chapter stated that the Wyoming Professional Review Panel Act would be effective on January 1, 1990, if the Supreme Court did not previously promulgate rules for a screening procedure for malpractice claims. We declined to establish such a screening procedure.

The Wyoming Professional Review Panel Act mandates that the "panel shall have a director who shall be appointed by and serve at the pleasure of the governor." Section 9–2–1805(b). Because Governor Sullivan has failed to activate the provisions of the Wyoming Professional Review Panel Act by appointing a director of the panel, Petitioners petitioned this Court for issuance of a writ of mandamus requiring Governor Sullivan to execute and implement the Wyoming Professional Review Panel Act or, in the alternative, to show cause why the Wyoming Professional Review Panel Act has not been effectuated.[1]

We must begin by addressing Governor Sullivan's contention that Petitioners lack standing to seek the issuance of a writ of mandamus. In *Washakie County School District Number One v. Herschler*, 606 P.2d 310, 317 (Wyo.), *cert. denied* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980), we stated:

Standing is a concept used to determine whether a party is sufficiently affected to insure that a justiciable controversy is presented to the court. It is a necessary and useful tool to be used by courts in ferreting out those cases which ask the courts to render advisory opinions or decide an artificial or academic controversy without there being a palpable injury to be remedied. However, it is not a rigid or dogmatic rule but one that must be applied with some view to realities as well as practicalities. Standing should not be construed narrowly or restrictively.

(Citation omitted.) We have also recognized an exception to the standing requirement when we are faced with a matter of great public interest or importance. *Brimmer v. Thomson*, 521 P.2d 574 (Wyo.1974).[2]

---

1. This Court has original jurisdiction to issue writs of mandamus pursuant to article 5, section 3 of the Wyoming Constitution. *See generally* Wyo.Stat. §§ 1–30–101 to –118 (1977) and Rule 3, Rules of the Supreme Court of Wyoming.

2. We acknowledge that the public interest or importance exception was applied in an action brought pursuant to the Uniform Declaratory Judgments Act. *Brimmer*, 521 P.2d 574. We fail to perceive any reason why we should not apply that exception in this case. *See generally* Keiter, *An Essay on Wyoming Constitutional In-*

Without deciding whether Petitioners have standing to seek the issuance of a writ of mandamus which requires Governor Sullivan to implement the Wyoming Professional Review Panel Act, we hold that the issue of whether the Wyoming Professional Review Panel Act is constitutional is of great public importance and, therefore, merits a decision from this Court.[3]

■ The review panel created by the Wyoming Professional Review Panel Act is almost identical to the review panel created in the Wyoming Medical Review Panel Act. The most significant differences are: (1) The Wyoming Professional Review Panel Act provides for a director appointed by the governor while the director of the medical review panel was the attorney general or his designee; and (2) the Wyoming Professional Review Panel Act applies to "professionals" and not to just health care providers as provided by the Wyoming Medical Review Panel Act. The term "professional" is defined as "a person licensed under W.S. 33–1–101 through 33–38–110 for whom the normal qualifications for licensure include at least a year of specialized post secondary education, or a hospital or nursing care facility." Section 9–2–1803(a)(iii). The purpose of the Wyoming Professional Review Panel Act is to:

(i) Reduce the costs of professional malpractice claims to both plaintiffs and defendants by a less formal professional review of claims before litigation is pursued in the courts; and

(ii) Improve the ability of the state to regulate professions and ensure professional competence.

Section 9–2–1802(a).

Similar to the Wyoming Medical Review Panel Act, the Wyoming Professional Review Panel Act provides that "[n]o complaint alleging malpractice shall be filed in any court against a professional before a claim is made to the panel and its decision

is rendered." Section 9–2–1806(a). Once the director receives a claim, a hearing must be held within 120 days unless the panel finds good cause to delay the hearing. Section 9–2–1809(a). The Wyoming Professional Review Panel Act states that the hearing shall be informal and that the Wyoming Rules of Evidence do not apply. Section 9–2–1809(b). The panel must determine the existence of:

(i) Substantial evidence that the acts complained of occurred and that they constitute malpractice; and

(ii) A reasonable probability that the claimant was injured as a result of the acts complained of.

Section 9–2–1810(a). No decision by the director or the panel is subject to review by a court. Section 9–2–1809(b). The panel's decision "is not binding upon any party," § 9–2–1810(d), and the decision "is not admissible as evidence in any action." Section 9–2–1811(c).

The Wyoming Professional Review Panel Act violates the equal protection guarantees of the Wyoming Constitution in the same manner as the previously enacted Wyoming Medical Review Panel Act. *Hoem,* 756 P.2d 780. The legislature's expansion of the class of professionals to which the Wyoming Professional Review Panel Act applies does not cure the constitutional defect explained in *Hoem.* We decline to reverse *Hoem.* We hold that the Wyoming Professional Review Panel Act is unconstitutional and deny Petitioners' Petition for Writ of Mandamus.

URBIGKIT, C.J., filed a specially concurring opinion.

THOMAS, J., filed a specially concurring opinion, in which URBIGKIT, C.J., joined.

GOLDEN, J., filed a specially concurring opinion.

CARDINE, J., filed a dissenting opinion.

---

*terpretation,* XXI Land & Water L.Rev. 527 (1986).

**3.** Both Petitioners and Governor Sullivan agree that this Court should not issue a writ of mandamus if we determine that the Wyoming Professional Review Panel Act is unconstitutional.

That concurrence follows the principle that the issuance of a writ of mandamus is appropriate "to command the performance of a ministerial duty which is plainly defined and required by law." *Williams v. Stafford,* 589 P.2d 322, 324 (Wyo.1979).

URBIGKIT, Chief Justice, concurring generally and with special concurrence.

I concur with the majority and join in the special concurrence of Justice Thomas. I write further to reflect that in spotlighted certainty for this bicentennial year, due process and equal protection, especially under the Wyoming Constitution, should not be unattained and the ephemeral rights not ever to be available to the average citizen. When faced with the inquiry "why not justice?", I become dissatisfied by assumption that the legislature can amend those rights out of the Constitution for this or another special interest proposition.

Current history clearly reveals that reduction of rights available to the injured involves losses monumentally higher than benefits to the wrongdoer in reduced insurance premiums. Justice may be priced, but surely not in constitutional terms of loss of due process and equal protection.

I would even be more incensed by application of the principal of insulation from responsibility for fault-caused injury to be provided by the newest enactment, Wyo. Sess.Laws ch. 262 (1989), W.S. 9–2–1801 through 9–2–1812, when extended from the health care practitioners to some or all of the practitioners of abstracting, accountancy, architecture, attorneys-at-law, pawnbrokers, barbers, boxing exhibitors, podiatrists, chiropractors, collection agencies, cosmetologists, dance hall operators, debt adjusters, dentists, embalmers, hotel keepers, junk dealers, merchants-itinerants or temporary, nursing home administrators, optometrists, pharmacists, physicians, psychologists, real estate brokers, surveyors and engineers, veterinarians, warehousemen and professional counsellors, and most recently augmented to include real estate appraisers. W.S. 33–1–101 through 33–39–130, "Professions and Occupations." [1]

Strangely we omit educators, ministers, insurance agents and librarians by the accident of placement within the Wyoming statutes. Wyo.Sess.Laws ch. 262 (1989) is immeasurably worse than its predecessor, W.S. 9–2–1501 through 9–2–1511, Wyo. Sess.Laws ch. 92 (1986), which we declared unconstitutional in *Hoem v. State*, 756 P.2d 780 (Wyo.1988).

A justice system with the availability of effective jury inquiry is incomprehensibly preferable to idiomatic obstructions denying expeditious determination of fault and responsibility. Wyo. Const. art. 1, §§ 2, 6, 7, 8, 9, 33, 34, 36 and art. 10, § 4.

THOMAS, Justice, concurring specially, with whom URBIGKIT, Chief Justice, joins.

I concur in the disposition of this case according to the majority opinion. I am troubled that the Legislature of the State of Wyoming apparently read the opinion of the court in *Hoem v. State*, 756 P.2d 780 (Wyo.1988), as addressing the narrowness of the class of defendants in the context of equal protection of the law. Read carefully, I am satisfied that, in the *Hoem* case, this court made it clear that the equal protection violation was found in the disparity in treatment of injured persons, some of whom were required to submit their cases to the medical review panel while others did not encounter that impediment to pursuing their claims. Obviously, this new legislation does not even address that same deficiency.

I also adhere to the additional rationale to support a conclusion of unconstitutionality set forth in the concurring opinion in *Hoem* that I authored and in which Justice Urbigkit joined.

GOLDEN, Justice, specially concurring.

I concur since *Hoem* appears controlling. Were that not so, I would prefer a more searching and rigorous examination of the equal protection issue, as well as the other constitutional issues raised. In the context of constitutional analysis, I find it difficult to argue with some of the principles set out by the *Hoem* dissenters.

---

1. The demarcation for access to reduced justice delineated by W.S. 9–2–1803(a)(iii) of wrongdoers who had one year post secondary education does not add amelioration for my concern for applied due process or equal protection.

Aside from the constitutional issues, I would also prefer that this court identify, explore, and try to resolve certain concerns about "affected party" principles and standing doctrine in Wyoming jurisprudence. *See* Keiter, *An Essay on Wyoming Constitutional Interpretation*, 21 Land & Water L.Rev. 527, 538–41 (1986). This appeal presents a unique opportunity for such an analysis, but we do not seize it.

CARDINE, Justice, dissenting.

I fail to see how the Wyoming Professional Review Panel Act (PRPA) is constitutionally defective "in the same manner as the previously enacted Wyoming Medical Review Panel Act." Majority opin. at 4. The majority's summary dismissal of this issue does not explain that statement. I found no problem with the constitutionality of the Medical Review Panel Act and would have upheld it against the challenge. *Hoem v. State*, 756 P.2d 780, 787–94 (Wyo. 1988) (Cardine, J., dissenting, with whom Brown, C.J., joined). I advocate reversing *Hoem* for the reasons explained in my dissent in that case. Yet even if this court allows *Hoem* to remain good law, *Hoem* should not control the outcome of this action. I dissent.

The majority takes the approach that this case is *Hoem* revisited.[1] In doing this, it ignores the proper posture in which this court must review the legislation in question in this case. Statutes are presumed to be constitutional, and the burden is on the attacker of the statute to demonstrate its unconstitutionality beyond a reasonable doubt. *O'Brien v. State*, 711 P.2d 1144, 1147 (Wyo.1986).

*Hoem* held that the Medical Review Panel Act was not rationally related to a legitimate state interest. The Act's stated purpose was:

"to prevent where possible the filing in court of actions against health care providers and their employees for professional liability in situations where the facts do not permit at least a reasonable inference of malpractice and to make possible the fair and equitable disposition of such claims against health care providers as are, or reasonably may be, well founded." W.S. 9-2-1502 (Cum.Supp. 1986) (declared unconstitutional in *Hoem v. State*, 756 P.2d 780 (Wyo.1988)).

The Medical Review Panel Act's purpose contrasts sharply with the stated purpose of the PRPA. W.S. 9-2-1802 states:

"(a) The purpose of this act is to:

"(i) Reduce the costs of professional malpractice claims to both plaintiffs and defendants by a less formal professional review of claims before litigation is pursued in the courts; and

"(ii) Improve the ability of the state to regulate professions and ensure professional competence."

The Professional Review Panel Act's first purpose is to reduce the cost involved in resolving professional malpractice claims regardless of merit of the claim. The Professional Review Panel Act has a second purpose: to improve the ability of the State to regulate professions and ensure professional competence. W.S. 9-2-1802(a)(ii). This latter purpose embraces a compelling state interest. *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975).

The majority, through its reliance on *Hoem*, implicitly applies the rational basis test to deny the constitutionality of the Professional Review Panel Act. It apparently finds no fundamental interest involved in the PRPA. Although a short delay in access to the courts is involved in the act, access is not denied. The fact that under Wyoming Constitution Art. I, § 8 the courts are required to be open and to afford justice for injury does not prevent setting standards for causes of action or placing limitations upon them if done in the interest of justice. *Meyer v. Kendig*, 641 P.2d 1235, 1241 (Wyo.1982). Since a legitimate state objective surely includes a compelling state interest, as is involved here, the Act is constitutional if it bears a ration-

---

**1.** Respondent's counsel provided the court at oral argument with a series of puns based on Hoem's pronunciation as a homonym of "home." I resist the temptation to continue the puns. If such occurs, it is unintentional.

al relationship to the objective. *Baskin v. State ex rel. Worker's Comp. Div.*, 722 P.2d 151 (Wyo.1986). Such a relationship exists between the Act and its purposes. Moreover, the party challenging the statute has the burden to show otherwise. *Id.* at 155. The burden was not carried in this case by the challenging party.

In his specially concurring opinion in *Hoem*, Justice Thomas advocated the adoption of a "heightened scrutiny" test requiring "the statutory classification to substantially further a legitimate legislative purpose." 756 P.2d at 785 (Thomas, Justice, concurring, with whom Urbigkit, Justice, joined). Justice Thomas found this test applicable to the Medical Review Panel Act because it did "not involve any political question of importance to the state but essentially touch[ed] upon private interests." *Id.* This Act does not contain the same infirmity but presents a compelling state interest. Additionally, the majority has not embraced the heightened scrutiny test. Justice Thomas' special concurrence also concluded that the class of claimants was too small—the result being unconstitutional special legislation. *Id.* at 786. That claimed infirmity likewise does not exist in the PRPA, for the legislature, by expanding that act to include essentially all professionals, also expanded by great numbers the class of claimants affected.

I expressed concern in my *Hoem* dissent that the Medical Review Panel Act was declared unconstitutional because the majority of the court simply did not like the statute. 756 P.2d at 790. I question again whether the same motive prompted the majority to unconstitutionality in this case. We should not concern ourselves with the wisdom of enacting this statute, only its constitutionality. 756 P.2d at 791; *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 944, 103 S.Ct. 2764, 2780, 77 L.Ed.2d 317 (1983). With the holding in *Hoem* and its unjustified application to the PRPA, I fear the constitutionality of any legislation allowing for administrative pre-hearing processing of all professional liability claims is presently an impossibility. Absent reversing *Hoem* or sustaining the constitutionality of this Act, this type of

legislation will never satisfy this court as constitutional. Thus, a constitutional amendment is now required for the legislature to even attempt to deal with this perceived problem. If this court had reviewed this Act under the standards we had adopted, such a drastic measure would be unnecessary.

